CITY OF TAMPA, APPELLANT, VS. FREDERICK A. SALOMONSON, APPELLEE.

MUNICIPAL LAW—INJUNCTION TO RESTRAIN BOND ISSUE—ORDINANCE GOOD IN PART AND BAD IN PART—CONFLICT BETWEEN CITY ORDINANCE AND STATE LAW—MUNICIPALITY MAY APPOINT MINISTERIAL AGENTS.

1. Where a bill in equity to restrain a proposed issue and sale of municipal bonds shows no other valid reason why such issue and sale should be estopped, except that the *proceeds* of the sale of such bonds will go into and be expended by improper hands, it is error to enjoin the *issue and sale* of such bonds, or to go further with an injunction in such a case, than to restrain the delivery of such bonds, when issued, to unauthorized hands, and to prohibit the proceeds thereof from going into the hands of and being expended by unauthorized persons.

2. Where the State Legislature, from whom our municipalities derive all of their corporate powers, enacts a law imposing specific duties and powers connected with the government of the municipality upon a board of public works, as officers of such municipality, an ordinance of such city is inoperative and void that undertakes to impose the same powers and duties upon any other person, agent or official, than such board of officials created by the State law.

3. Chapter 3951 laws, approved May 31st, 1889, entitled "An act to provide for the creation of a board of public works for the city of Tampa, Florida, and prescribing its powers and duties," is

JANUARY TERM, 1895. 447

City of Tampa v. Frederick A. Salomonson.—Argument of Counsel.

not in conflict with, and has not been repealed by, Chapter 3950 laws, approved June 5th, 1889, nor by Chapter 4084, approved June 8th, 1891, nor by Chapter 4085, approved June 8th, 1891, nor by Chapter 4086, approved June 10th, 1891.

4. It is well settled that a municipal ordinance, like a legislative statute, may be good in part and upheld, while part thereof may be adjudged to be illegal and void, provided the void parts thereof are not so connected with or essential to the completeness of the valid parts as that the latter can not stand alone or be carried out independently of and without the void provisions, or unless the different parts of the ordinance are so interdependent or blended together that it can not fairly be said that the Legislature would not have adopted the one without the other.

5. Municipal corporations have the power to appoint agents for the performance of such duties for it as are of a purely ministerial or administrative character. The receipt and sale, for current funds, of municipal bonds after they shall have been issued by the proper officers, and delivery of the proceeds of such sale to the proper custodian for the city, are such ministerial duties, the performance of which the municipality can legally delegate to an agent or agents; but the city can not appoint four of such agents for itself, and authorize them to choose and designate for it a fifth man; such an attempt would fall within the inhibition of the maxim, *delegata potesta non potest delegair*,

Appeal from the Circuit Court for Hillsborough county.

The facts in the case are stated in the opinion of the Court.

*J. B. Wall, Sparkman & Sparkman* and *M. B. Macfarlane*, for Appellant.

In this suit appellee, Frederick A. Salomonson, filed his bill in chancery in the court below against appellant, setting up that he was a resident citizen in the city of Tampa, the owner of valuable property both real and personal therein, which was subject to taxa-

tion by said city; that the council of the city of Tampa had recently, on the 8th day of June, 1894, attempted by an ordinance to authorize the issuing by said city of Tampa municipal interest bearing bonds to the amount of three hundred and fifty thousand dollars, and to create a board of trustees consisting of T. C. Taliaferro, S. M. Sparkman, J. A. M. Grable and Edward Manrara, who were to select the 5th, and whose duties it should be to receive and sell said bonds, to receive the money arising from such sale, and clothing said trustees with power and authority to expend the same, (which ordinance was made a part of said bill as exhibit A.); that the issuing of said bonds would create a debt against the city of Tampa, for the payment of which, together with interest, the property of complainant would be subject to taxation; that by reason thereof complainant's property would depreciate in value; that the said tax would become an apparent lien and cloud upon his title, and that he, complainant, would be subjected to a multiplicity of actions for the protection of his property, and greatly injured and embarrassed in the use and enjoyment of the same; that the said city did actually call the election, and that it was claimed by said city that at the election so called and held on the 14th day of July, 1894, a majority of the votes cast by the qualified electors of the said city approved the issuance of said bonds; that the said election so held on the 14th day of July, 1894, was totally illegal and void, as well as the ordinance authorizing and calling the same, for the reason that if the bonds are issued, and sold under and by virtue of said ordinance and said election, the funds arising from the sale thereof will be wrongfully diverted from their proper and legal channel, and the same will be taken charge of, spent and used by a body of men so-called

trustees, who have not and can have no legal right or authority to take possession thereof, or to receive, control, sell or dispose of the same, or to expend the proceeds arising therefrom, it being expressly provided by Chapter 3951 of the laws of Florida, which is referred to in said bill, a copy of which is made a part thereof, that there should be and was created by said act a board of public works consisting of three members who should have exclusive power and control over the construction of sewers, building and repairing bridges and the grading and paving of streets, as well as of certain other matters therein particularly described and enumerated; that said act further provided that all moneys levied or raised for such purpose from taxes, bonds or other sources, should be collected and placed to the credit of said board of public works, and should not be diverted from said board or be used by the mayor and city council for any other purpose, but that the same should remain a separate fund in the hands of the treasurer of the said city of Tampa; that said act is still in full force and effect, never having been repealed either expressly or by implication, and that the board of trustees provided for in said ordinance is unauthorized and illegal, and that said trustees have no legal right to receive, sell or dispose of said bonds, or receive the money or proceeds arising therefrom, to deposit the same in any bank or banks, to expend the same or any part thereof, or to contract for or provide for a system of sewerage in said city of Tampa. The bill prayed for a temporary and permanent injunction restraining the city of Tampa, its officers, agents and attorneys from issuing, selling, delivering, pledging or otherwise disposing of any of said bonds mentioned and described in said bill of complaint.

29

Afterwards, on the 24th day of July, 1894, on application of complainant in the court below, a temporary restraining order was issued as prayed for in said bill, from which decree and order of the court below an appeal is taken to this court.

First. The first question presented by the record in this case is whether Chapter 3951 of the act of 1889 was in force at the time of the passage of ordinance 116 by the city council of Tampa, providing for the calling of said election and the issuing of said bonds, for if said act is repealed, or the portions thereof which undertook to give the board of public works exclusive power and control over the grading and paving of streets, the construction of sewers and the building and repairing of bridges, then it would be admitted by all that said ordinance was not invalid by reason of anything contained in said Chapter 3951.

We contend first that so much of Chapter 3951 as gave the board of public works exclusive power and control over the construction, supervision, etc. of streets, side-walks, bridges and sewers was repealed by Chapter 3950 passed at the same session of the Legislature. The former was approved May 31st, 1889, and the latter June 5th, 1889; so that Chapter 3950 containing the latest expression of the legislative will would repeal any provisions contained in Chapter 3951 repugnant to those contained in the latter act. Sutherland on Statutory Construction, sec. 283, page 369; Potter's Dwarris on Statutes, page 113 note 9; Pierce vs. Delamatter, 1 N. Y. page 17.

Were there such inconsistencies? That there were a comparison of the two acts will abundantly show.

But if this view is not correct, then we claim that Chapter 3951, or at least the provisions referred to,

JANUARY TERM, 1895. 451

City of Tampa v. Frederick A. Salomonson.—Argument of Counsel.

were certainly repealed by Chapter 4084 and 4085 and 4086 passed by the Legislature of 1891 and approved June 8th of that year.

True there is no express repeal of that particular Chapter, but containing, as they do, provisions inconsistent with those in Chapter 3951 they repeal the latter by implication.

By reference to Chapter 3951 it will be seen that it undertook to create a board of public works for the city of Tampa, and to prescribe the powers thereof. These powers are set forth in sec. 7, which provides as follows: That "the board of public works shall have exclusive power and control over the construction, supervision, repairing, grading, improving of all streets, alleys, avenues, lands, public wharves and landings, market houses and spaces, bridges, sewers, drains ditches, culverts, canals, streams and water courses, side-walks and curbing, and over the lighting of all such public places as may be deemed necessary within the corporation, and to fix and establish the grades of all streets and alleys, avenues and thoroughfares. The said board shall also have exclusive power, supervision and control over the construction, repairing, cleaning, lighting and heating of all public buildings and over all public improvements of the city.

Other powers are given, but they are merely incidental to those above referred to, so that if any of the powers conferred in section 7 have been repealed, the powers incidental to those so repealed are likewise repealed.

Statutes may be repealed by implication. Southerland on Statutory Construction, secs. 137 and 138; Keech vs. The State of Florida, 15 Fla. 591; Potter's Dwarris on Statutes, 113 and 154; Wood vs. United States, 16 Peters, 342; Chapoton vs. Detroit, 38 Mich.

636; People vs. Burt, 43 Cal. 568; Merserau vs. Merserau (N. J. Chan.) 26 At. 682; New London & Northern R. R. Co. vs. Boston & Albany R. R. Co. 102 Mass. 389; Eaton vs. Burke et al. 22 At. Rep. 452.

By reference to Chapter 4084 and 4085 it will be seen that the identical powers which Chapter 3951 undertook to give to the board of public works, or at least those referred to in appellee's bill of complaint, were in the former acts conferred upon the city council of the city of Tampa. The board of public works, for instance were given the exclusive power and control over the construction, supervision, repairing, grading and improving of all streets, alleys and avenues. In opposition to this, Chapter 4084 gives to the city council power to keep open and repair streets, alleys, parks, groves and grounds, to close the same when necessary, to erect and keep in repair side-walks and streets, while Chapter 4085 prescribes a mode for the grading and paving of streets by the city council, thus giving the council absolute power over the streets in the city, not only in the construction, repairing, grading and paving of the same, but the supervision thereof as well.

If then the city council was clothed with all this power over the streets, and the further power to close the same when necessary, the board of public works could not in the nature of things have the exclusive power of said streets and alleys, or any power whatever to control the same.

Chapter 3951 further undertook to give to the board of public works exclusive control and power over sewers, whilst Chapter 4084 gave the city council power to prescribe and maintain a system of sewers and sewerage.

JANUARY TERM, 1895.    453

City of Tampa v. Frederick A. Salomonson.—Argument of Counsel.

Again, Chapter 3951 gave to the board of public works exclusive power and control over the construction, supervision and repairing of bridges; whilst Chapter 4084 gives the city council the right to construct bridges and to regulate the same. True this chapter only gives in specific language to the city council power to regulate bridges, but in addition to this it clothes the city council with all the powers imposed upon it by the general laws of Florida then in force or which might thereafter be enacted providing for the government of cities and towns and not inconsistent with the provisions of said act. The general laws thus became as much a part of Chapter 4084 as if they had been embodied therein. Sutherland on Satutory Construction, 257; Turney vs. Wilton et al., 36 Ill. Rep. 385; Jacob Darnstaetter vs. John F. Maloney, 45 Mich. 621; Jones et al. vs. Dexter, administrator, et al., 8 Fla. 276.

By reference to Sec. 693 of the Revised Statutes, which was then and is yet in force, it will be seen that this section gave, among other things, the specific power to the city council to construct bridges. Reading this section as a part of Chapter 4084, the conclusion is irresistible that the city council of Tampa was clothed with absolute power over the bridges within the city limits and used for city purposes. But Chapter 4084 went further, and in addition to the powers already referred to, gave the city council power to do and regulate "every other matter or thing that may be done to promote the peace, health, welfare, prosperity and morals of the city, and all powers necessary for carrying into effect the aforesaid powers."

This certainly gives to the city council ample power not only over streets and bridges, but over sewers and sewerage, as the construction and maintenance of them

and each of them would tend to promote either the health, prosperity or welfare of the city, or all of them. (Dillon on Municipal Corporations, 394, 5–6.)

It will further be noticed that the Legislature, in enacting Chapter 4084, omitted all reference to the board of public works, although in the act to which this chapter was an amendment certain powers were given to the city council subject to the board of public works when established. This would further show an intention to repeal the statute creating the board of public works.

We hence feel forced to the conclusion that, assuming for the sake of argument that the act of 1889 undertook to give to the board of public works exclusive control over the streets, sewers, sewerage and bridges, the same power was afterwards given to the city council by the two acts of 1891 above referred to, if not by Chapter 3950. And as the two bodies can not in the nature of things exercise the same power over streets, sewers and bridges at one and the same time, so much at least of Chapter 3951 as gives to the board of public works such powers was not in existence when the city council passed ordinance number 116 and called for the election for the issuing of said bonds.

It will not be necessary for us to determine whether the whole of the act has been repealed if it is shown that so much thereof as referred to the subjects embraced in ordinance No. 116 was abrogated by subsequent legislation, and this we claim to have done. The only item enumerated in Chapter 3951 for which the bonds mentioned in the ordinance No. 116 were to be issued, are those of streets, sewers and bridges, and the incidental power of directing the expenditures of money necessary to exercise the powers conferred in section 7. So if the purpose of the expenditures has been taken

·JANUARY TERM, 1895. 455

City of Tampa v. Frederick A. Salomonson.—Argument of Counsel.

away, the incidental right to have money placed to its credit and to expend the same for such object was also taken from said board of public works.

Second. But if we were to assume that Chapter 3951 was not repealed, still there is no conflict between this act nor any part thereof and ordinance No. 116, as claimed by appellee in his bill of complaint.

Section 9 of said chapter provides that the board of public works shall on or before a day fixed in each year prepare and submit to the city council an itemized estimate of the amount of money necessary and advisable, in their opinion, to spend in the execution of the duties entrusted to them for the ensuing year, giving in detail the plan of construction and repairs and estimate of expenditure and salaries, etc., proposed by them, with estimate costs of each improvement or salary, specifying for what department required, as streets, sewers, public buildings, waterworks, fire department, etc."

Section 10 provides that it shall be the duty of the mayor and city council in their annual levy of taxes to make such levy as in their judgment shall be necessary and advisable for expenditure under the direction of the board of public works, and the amount so levied or raised from taxes, bonds or other sources, shall be collected and carried to the credit of the board of public works and shall not be diverted from said board, or be used by the mayor or city council for any other purpose; but the same shall remain as a separate fund in the hands of the treasurer of the city, etc.

Section 4 of said ordinance provides that "there shall be a board of five trustees, four of whom are named in the ordinance, and whose duty it shall be to receive the said bonds as soon as the same are engraven and executed, and sell the same and dispose of the

proceeds thereof under the instructions of the city council, as may be provided for by ordinance or resolution duly passed, but provides that in no case shall the funds received from the sale of bonds be used for any other purpose or purposes than those specially provided for in said ordinance."

Section 5 provides, among other things, that "the bonds shall be sold and delivered in such amounts as the city council may provide by resolution, as the proceeds thereof are needed for the purposes in said ordinance provided; and that the proceeds of said bonds when sold shall be deposited in some National bank or banks to be selected by the trustees, which bank or banks shall then be solely responsible to the city for the safe-keeping of said property, and that such funds shall be turned over to the city treasurer in such amounts and at such times as the city council may deem best."

From the above quotations it will be seen that said section 10 of Chapter 3951 provides that the money raised from taxation or sale of bonds, or other sources, shall be placed to the credit of the board of public works, and shall not be diverted from the objects for which it was raised; and that said ordinance goes no further on that line than to direct the trustees to sell the bonds and dispose of the proceeds under the instructions of the city council, as it may provide by ordinance or resolution duly passed.

It is to be presumed that the city council will not violate any existing law, and that it will direct the trustees to place the money in the treasury to the credit of the board of public works, in case there is such a board, which has not been shown, even though in passing into the treasury it may go through a National bank or banks to be selected by the trustees.

Again, it has not been shown in appellee's bill of complaint, or otherwise, that the board of public works had prepared and submitted to the city council an itemized estimate of the amount of money necessary and advisable, in their opinion, to spend in the execution of the duties entrusted to said board, as required by section 9 of said act; and we further contend that until the board of public works had made such estimate the city council would not be compelled to place money to the credit of said board of public works. If, however, such board has the right to have money thus placed to its credit, it would be for the board to complain, and not a tax payer in the city of Tampa.

Still, it is to be presumed that the city council will order placed to the credit of said board of public works, if the same is in existence, such amount as they may deem necessary and advisable for expenditure under the direction of said board, and that the same will not be diverted from the objects for which said funds may be raised.

Third. The city council had power and authority to create such a board of trustees as that created by ordinance No. 116. 1st Dillon Municipal Corporations, sec. 96; Stewart vs. Council Bluffs, 58 Iowa 642; Hitchcock vs. Galveston, 96 U. S. 351.

Such trustees are not officers, but mere agents of the corporation. Bunn vs. The People ex rel. Laflin, 45 Ill. 399; People vs. Middleton, 28 Cal. 603.

*Gunby & Gibbons, Shackleford & Simonton*, for Appellee.

As to the right of a citizen and tax payer to prevent the issuance and sale of city bonds, the sale of which would be illegal, and would increase his taxes in order to pay interest on and principal of the same, there can

be, we think, no question. It has been well settled by the weight of judicial authority, and the grounds upon which the right exists are thoroughly discussed by Mr. Justice Field, of the Supreme Court of the United States, in the case of Crampton vs. Zbriskie, 101 U. S., page 601. This right has also been recognized and acted upon by our own Supreme Court in the case of Telfair Stockton vs. Benjamin R. Powell et al. 29 Fla., page 1. See High on Injunctions, vol. 2, secs. 1236 and 1237; Dillon on Municipal Corporations, vol. 2, sec. 918; 26th Fla., pages 23 and 29; 6th Fla., page 656; Hodgman vs. Chicago & St. Paul Ry. Co., 20 Minn., page 37.

The right to maintain a suit upon the bill being admitted, the next question is whether or not the city council of the city of Tampa proceeded legally up to the point of holding the bonding election on the 14th day of July, 1894. It is a well-settled principle that the power vested by the Legislature in a city corporation to make ordinances for its own government, can not be construed as imparting to it any power to enlarge, diminish or vary its powers by any of its ordinances. See Dillon on Municipal Corporations, vol. 1, secs. 316 and 317; Scott's Exrs. vs. City of Shreveport, 20th Federal Reporter, page 714.

In the case of the Mayor and City of Baltimore vs. Porter, the Supreme Court of Maryland said: "Where power is conferred upon public officers by legislative enactment, such power can be executed by them only in the way directed by the law, and unless the law granting the power is strictly complied with the acts of the officers are void.

A municipal corporation can not divest itself of legislative discretion conferred by law. It can not sur-

render it by contract, nor bind itself not to exercise it whenever it becomes necessary. 15th Amer. & Eng. Enc. of Law, page 1045.

A municipal ordinance in conflict with a State law on the same subject is void. Thomas vs. Richmond, 12 Wallace U. S. Supreme Court, page 349; Markle vs. Akron, 14 Ohio, page 586; 11th Ohio, page 688.

Whenever a corporation undertakes to establish an unauthorized by-law, the court holds it to be void. Bishop on Statutory Crimes, sec. 26. The question directly to be settled by this court is: Did the city council exceed its authority when it passed the bonding ordinance a copy of which was attached to the bill? and in order to settle this question we have to consider the various provisions of this ordinance both as to the object therein specified, the powers conferred and the parties upon whom conferred. After providing in section 1 that the city council be authorized to borrow $350,000.00, section 2 providing for the issue of the bonds, section 3 providing for the signing thereof, section 4 provides that there shall be five trustees, and prescribes their duties and powers in the same section and in section 5; section 6 provides for the disposal of the moneys received from the sale of said bonds, and section 7 for the levy of a tax to pay interest and provide a sinking fund for the payment of the principal. It is provided in the same ordinance that an election shall be called at which the qualified electors of the city shall decide by vote whether the bonds shall be issued, and this election is predicated upon, and depends upon, the conditions contained in the prior sections referred to as to the method in which the moneys shall be expended and the people to whom the power to expend is delegated.

The Legislature of this State has, we contend, set-tled, beyond the power of the city council to change, the question as to the expenditure of public money for the grading and paving of streets and the construction of suitable sewerage system, and the city council has no power or authority either to repeal or change an act of the Legislature, or to pass a valid ordinance in conflict with it. See Chapter 3951, Laws of Florida, 1889, page 185.

This act provides, among other things, that the amount levied or raised from taxes, bonds or other sources, shall be collected and carried to the credit of the board of public works, and shall not be diverted from the said board or be used by the mayor and city council for any other purpose; but the same shall remain as a separate fund in the hands of the treasurer of the city, and his bond shall be sufficient to recover any amount of the public moneys that may come into his hands.

This statute is mandatory, and the city council has no right to provide by ordinance that the proceeds of sale of bonds shall be deposited in some National bank or banks, as contemplated in section 5 of the ordinance referred to.

A National bank is not an officer of the city, owes to it no obligation, gives no bond for the safe-keeping of its money, and has no right to have the money in its possession except at the instance and by the consent of the legal custodian of the public money, to-wit: the city treasurer. If the city council has the power to divert $35,000.00 from its proper and legal channel, then by a parity of reasoning provide by ordinance that all the funds of the city shall as fast as collected from any source can be paid over to a party not recog-nized by law, not an officer of the city and not under

bond, and thus indirectly abolish the office of city treasurer, a thing which we think nobody would claim that they can do directly. See City of Baltimore vs. Porter, 79th American Decisions, page 686; S. C. 18 Md. 284.

Statutes enacted at the same session of the Legislature are to be construed to a certain extent as one entire act, and in order to make a later enactment repeal a former one passed at the same session, there must be an express declaration or an absolute inconsistency. See Endlich on Interpretation of Statutes, sec. 187.

Popular disregard of a statute will not repeal it, nor custom opposed to it. See Sutherland on Construction of Statutes, sec. 137, page 178.

Where a mandatory statute prescribes for the election or the appointment of officers, mandamus will lie to compel their appointment. See Moses on Mandamus, pages 128 and 134.

If the court should decide that the city council exceeded its powers in passing the ordinances referred to, and that the appointment of the trustees and prescribing their powers and duties was ultra vires and void, then the only remaining question before the court is as to the illegality of the entire ordinance.

Bearing in mind the well known principle that where a part of a statute is illegal and part legal, if that which is legal can stand alone, and be executed without reference to the illegal part, that such construction should be put on it as to render the legal part of it operative, we are thoroughly convinced that this statute or ordinance must fail altogether.

Mr. Cooley writing on this subject says: "If when the unconstitutional part is stricken out, that which remains is complete in itself, and capable of being

executed in accordance with the apparent legislative intent wholly independent of that which is rejected, it must be sustained. If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail unless sufficient remains to effect the object without the aid of the invalid portion. And if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the Legislature intended them as a whole, and if all could not be carried into effect the Legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected, must fall with them. See Cooley's Constitutional Limitations, page 213; 2d Gray, "Mass.," page 84; Commissioners vs. Silver, 22d Ind., page 491; Allen vs. State of La., 103 U. S. Supreme Court, page 80; Horr & Bemis on Municipal Ordinances, Sec. 139.

Mr. Cooley in his work on Constitutional Limitations, page 214, says: "It has accordingly been held where a statute submitted to the voters of a county the question of the removal of their county-seat and one section imposed the forfeiture of certain vested rights in case the vote was against the removal, that this portion of the act being void, the whole must fall, inasmuch as the whole was submitted to the electors collectively, and the threatened forfeiture would naturally effect the result of the vote. See O'Brien et al. vs. Krauz, "Minn." 30 N. W., page 458, S. C. 36 Minn. 136. This is a leading case approved by subsequent cases. Meyer vs. Berlandi, 1st L. R. A., page

777, S. C. 39 Minn., 438; State of Ind. ex rel. Holt vs.
Denny, 4th L. R. A., page 65, S. C. 118 Ind. 449. The
court in this case on page 77b says: "This is the rule
universally held by the courts." Burkholtz vs. State,
16th Lea, Tenn., page 71; McBryde vs. The City of
Monte Sana, Washington Supreme Court, 34th Pacific,
page 559, S. C. 7 Wash., 69. Voting for two propo-
sitions where one is illegal. Sudler vs. Chosen Free-
holders of Hudson, 39th N. J. Law, IIa; Attorney-
General vs. City of Detroit, Mich. 7th L. R. A., page
99, S. C. 78 Mich., 345; 16th Pickering, "Mass.," page
126.

Bishop on Statutory Law, section 34, says: "As al-
ready seen, like doctrine applies to municipal by-laws."
"A by-law," said Lord Kenyon, C. J., "may be good
in part and bad in part, yet it can be so only when the
two parts are entire and distinct from each other."

TAYLOR, J.:

Frederick A. Salomonson, the appellee, upon a bill
in equity in the Circuit Court of Hillsborough county,
obtained a temporary injunction against the city of
Tampa, a municipal corporation, the appellant, re-
straining it from issuing, pledging or selling $350,000
of its city bonds, and from this order the city appeals.

The bill, omitting its formal parts, is as follows:
"That complainant is a resident and citizen of the said
city of Tampa, and is the owner of valuable property,
both real and personal, situate, lying and being within
the corporate limits of the said city of Tampa, and
that said property is subject to taxation by the said
city and the authorized officers thereof; that the city
council of the said city has recently, to-wit: on the
8th day of June, A. D. 1894, attempted by an ordi-
nance to authorize and provide for the issuing by the

said city of Tampa of municipal bonds of the said city to the amount of three hundred and fifty thousand dollars ($350,000), to bear interest at the rate of six *per cent. per annum*, and to create a board of trustees, consisting of the following named persons, to-wit: T. C. Taliaferro, S. M. Sparkman, J. A. H. Grable, Edward Manrara, and the fifth trustee to be supplied by those already named, to receive and sell the said bonds, and to receive the money arising from such sale, and giving said trustees power and authority to expend the money arising from the sale of said bonds; and said ordinance having various other provisions therein, as will more fully appear by reference to said ordinance numbered 116, a true copy of which is hereto attached, marked 'exhibit A,' and made a part of this bill of complaint, to which your orator prays reference as often as may be necessary. That said bonds so provided for as aforesaid, are to run for a period of twenty years, and the interest thereon is to be paid semi-annually, and after the expiration of ten years the city council of the said city of Tampa is to have the option or privilege of redeeming said indebtedness or any portion thereof, commencing with the lowest numbered bonds, both the principal and interest of said bonds to be payable in gold coin of the United States of current date and time. That if the said bonds are issued, as threatened, they will become a debt against the said city of Tampa, for the payment of which, both the principal and interest, your orator's property situate within the corporate limits of the said city of Tampa will be yearly subject to taxation, and said property will be assessed and taxed as aforesaid; that by reason thereof your orator's property will depreciate in value; that the taxes so levied will become an apparent incumbrance, lien and cloud upon the

title; that he will be subjected to a multiplicity of actions for the protection of his property, and that he will be greatly injured and embarrassed in the use and enjoyment of his property, and will be put to much expense in protecting his constitutional and legal rights. Your orator further showeth that the officers of the said city of Tampa and the trustees in said ordinance named, or a majority of them, propose and intend to issue and sell the said bonds at as early a date as possible, and will do so unless they are restrained and enjoined from so doing by the order of this court. Your orator further represents that by virtue of the power granted to the city of Tampa by an act of the Legislature of the State of Florida, of the session of 1887, the same being Chapter 5779, the said city of Tampa pretends to have authority to issue said bonds and to pass the ordinance hereinbefore referred to, a true copy of which is hereto attached and marked 'exhibit A,' and by virtue of said authority the said city of Tampa called the election particularly described and mentioned in said exhibit A, and the said defendant city claims that at the election so called and held on the 14th day of July, A. D. 1894, a majority of the votes cast by the qualified electors of said city approved the issuance of said bonds. Your orator further represents that the said election so held on the 14th day of July, A. D. 1894, was totally illegal and void, and that the ordinance numbered 116 authorizing and calling the said election, a true copy of which is hereto attached, marked 'exhibit A' as aforesaid, was absolutely void for the reason that if the said bonds are issued and sold under and by virtue of said ordinance and said election, the funds arising from the sale thereof will be unlawfully diverted from their

proper and legal channel, and the same will be taken charge of, spent and used by a body of men so-called trustees, who have not and can have no legal authority or right to take possession of said bonds, or to receive or control the same, or to sell and dispose of the same, or to expend the proceeds arising from the sale of said bonds, or any part thereof, although said ordinance undertakes and attempts to confer such authority and power upon the said trustees so-called, it being expressly provided by the laws of this State, in Chapter 3951 thereof, passed by the Legislature at the session of 1889, which is hereby referred to and made a part of this bill, that in addition to the offices authorized by the charter of the city of Tampa there shall be a board of public works, which said board of public works was constituted and established by said Chapter, which further provided that the same should consist of three members who shall be freeholders in the city of Tampa and electors thereof; that the said board of public works shall have exclusive power and control over the construction of sewers, the building and repairing of bridges, and the grading and paving of streets, and of certain other matters therein particularly described and enumerated; that all money levied or raised for such purposes from taxes, bonds or other sources shall be collected and carried to the credit of said board of public works, and shall not be diverted from said board or be used by the mayor and city council for any other purpose, but the same shall remain as a separate fund in the hands of the treasurer of the said city of Tampa, and the bond of the treasurer shall be sufficient to recover any amount of the public money which may come into his hands; that said act is still in full force and effect, never having been repealed either expressly or by implication, and

·the board of trustees provided for in said ordinance is unauthorized and illegal, and neither the said trustees, nor any of them, nor their successors in office, have any legal right to receive the said bonds, to sell the same, or to dispose of the proceeds, to receive any money arising from the sale thereof, to deposit the ·same in any bank or banks, to expend the same or any part thereof, or to contract for or provide for a system of sewerage in the said city of Tampa.'' The prayers of the bill are, first, that the defendant city, its officers, *etc.*, be restrained and enjoined from issuing, selling, delivering, pledging or otherwise disposing of any of said bonds; second, for a temporary injunction restraining the same acts until the further order of the ·court; third, a prayer for general relief, and for sub-pœna.

The city ordinance complained of in said bill and .attached thereto as part thereof is as follows:

### "ORDINANCE NO. 116.

An ordinance to provide for the issuing of bonds of the city of Tampa, and for the creation of a board of trustees, and for the disbursing of funds received from ·the sale of said bonds.

Be it Ordained by the City Council of the City of Tampa:

SECTION 1. That the city council of the city of Tampa be authorized to borrow for the use of said city the sum of three hundred and fifty thousand ($350,000) dollars, for the term of twenty years, with the option or privilege of redeeming said indebtedness or any portion thereof, commencing with the lowest numbered bonds, at any time after the expiration of ten years, provided said redemption to be made upon some interest day after giving due notice at the places where the

said indebtedness is made payable; the said option or·
privilege being reserved by the city in the bonds here--
inafter referred to; and for the said three hundred and'
fifty thousand dollars to pay as interest thereon not
more than six *per centum per annum*, payable semi-
annually; both principal and interest of said bonds to·
be payable in gold coin of the United States of current:
weight and fineness.

SEC. 2. That to secure the payment of the loan pro-
vided for in section one of this ordinance, there shall·
be issued bonds of the city of Tampa of such denom--
inations as the city council may determine, said bonds·
to be made payable at some place in the city of New
York, to be determined upon by the said city council,
or at the office of the treasurer of the city of Tampa..
That said bonds shall mature within twenty days from·
the date thereof, and shall be made payable at matur-
ity or at the expiration of ten years if the city so de-
sires to redeem the same as provided for in section one.
That each bond shall have attached thereto interest
coupons of such number and amount as shall pay the·
interest semi-annually on the principal sum mentioned
in said bonds at a rate not exceeding six *per cent. per
annum* until the principal sum of said bonds shall fall¹
due; provided, however, that in case the bonds shall.
be redeemed by the city of Tampa at any time after the·
expiration of ten years from the date thereof, that
said interest coupons that have not matured at that·
time shall be null and void. That said interest cou-
pons when due shall be receivable by the city for all·
city taxes and dues of whatever description, and shall·
have the same conditions as to the places of payment.
thereof as provided for in the bonds.

SEC. 3. That the said bonds shall be signed by the·
mayor and countersigned by the clerk of the city of:

Tampa, and the corporate seal of said city attached thereto, and the same signatures shall be lithographed on the interest coupons.

Sec. 4. There shall be a board of five trustees consisting of the following named persons, to-wit:   T. C. Taliaferro, first ward; S. M. Sparkman, second ward; J. A. H. Grable, third ward; Edward Manrara, fourth ward; and the fifth trustee to be supplied by those above named, who shall each give bond in the sum of twenty thousand dollars to the city of Tampa, conditioned for the faithful discharge of his duties, whose duty it shall be to receive the said bonds as soon as the same are engraven and executed, and to sell the same and dispose of the proceeds thereof under the instructions of the city council as may be provided for by ordinance or resolution duly passed; but in no case shall the funds received from the sale of said bonds be used for any other purpose or purposes than those specially provided for in this ordinance.   Should a vacancy occur in said board of trustees by death, resignation or from any other cause, the said vacancy shall be filled by a majority vote of the remaining members of said board, and confirmed by the city council; said board of trustees shall hold their office until the said trust is discharged, or until their successors are confirmed by the council.

Sec. 5. The said bonds shall be sold and delivered in such amounts as the city council may provide for by resolution as the proceeds thereof are needed for the purposes herein provided, and the said bonds shall not be sold for less than par value, and the proceeds shall be applied solely to the purposes for which said issuance of bonds is hereby authorized.   The proceeds of said bonds when sold shall be deposited in some National bank or banks to be selected by the board of

trustees, which bank or banks shall then be solely re-sponsible to the city for the safe-keeping of said money,. and it shall be turned over to the city treasurer in such amounts and at such times as the city council may deem best, said money to be expended by the board of trustees as hereinafter provided for.

SEC. 6. The proceeds of the sale of said bonds shall be expended as follows: $15,000, or so much thereof as may be deemed necessary by the city council, shall be expended in rebuilding the bridge and the ap-proaches thereto on Lafayette street across the Hills-borough river; $110,000, or so much thereof as may be deemed necessary, shall be used in taking up the out-standing scrip of the city and in payment and liquida-tion of all other outstanding floating indebtedness due by the said city; $25,000, or so much thereof as may be deemed necessary, shall be loaned to the city out of the paving fund hereinafter named, and shall be ex-pended for the current expenses of the city until the taxes for 1894 are collected, said amount to be then returned to said fund out of said taxes; $150,000 shall be expended in the construction of a system of sewer-age in the city of Tampa, as follows: The two princi-pal mains, together with the cost of the survey and plans for said system of sewerage, to be first paid out of said appropriation, and the remainder thereof to be credited to the different wards of the city *pro rata* according to the taxes paid by each ward for the year 1894; said appropriated part to be used by each ward in sewering in said ward; but in no event shall any property-holder be compelled to lay more than one hundred feet of sewer pipe with which to connect with any sewer or lateral; and the remaining $50,000, to-gether with the $25,000 to be returned to the fund from the taxes of 1894, together with all other moneys.

left in the treasury belonging to any of the other different appropriations provided for in this section, after the object of said appropriation shall have been accomplished, shall be credited to the different wards of the city *pro rata* according to the amount of taxes paid by each ward for the year 1894; such proportionate part to be used by each ward in improving and paving streets therein.

SEC. 7. There shall be a special tax levied and assessed to pay the interest of said bonds, which tax shall be collected only in money or in past due interest coupons; and after the lapse of ten years the city council shall provide for the annual levy and collection of a special tax sufficient to provide a sinking fund for the payment of the principal of said bonds, out of which sinking fund, as fast as the same is collected, said bonds shall be paid and redeemed, beginning with the lowest numbered bonds as herein provided.

SEC. 8. The city council shall require the city treasurer to give such additional bond as the council may deem necessary before any moneys realized from the sale of said bonds shall be turned over to him; and in case the city treasurer shall fail or refuse to give said additional bond, then the city council, after due notice to him, shall authorize the payment of said moneys through the National bank or banks in said city selected by the board of trustees as herein provided for.

SEC. 9. The mayor of said city shall be authorized to enter into a contract with the Tampa Water Works Company, in case the election hereinafter provided for shall be in favor of the issuance of said bonds, binding the said city of Tampa to purchase from the said Tampa Water Works Company all of the water which may

be required to flush the sewers of said city, at the rate of seven cents per hundred cubic feet during the continuance of the present contract now existing between the said city and the Tampa Water Works Company, said Water Works Company to charge for water for flushing said sewers for only five days in any week, the water for such flushing to be furnished the city by said Water Company without charge for the two remaining days in any week; said company binding itself, on its part, that if said sewers shall be constructed, to furnish the city of Tampa during the continuance of its present contract with all the water which may be required to flush said sewers during the continuance of said contract at a rate of seven cents per hundred cubic feet; and also to furnish water for water-closets for private dwellings and store-houses at a rate of four dollars *per annum* each; provided, that all such residences and store-houses requiring water along the line of water mains shall connect their premises with the sewers, and place in each residence or store-house, or attached thereto, a water-closet connected with the water main.

SEC. 10. That the mayor shall call a special election of the qualified electors of the city, to be held on the 14th day ef July, A. D. 1894, at the polling places to be designated by the mayor in said call in the several wards of the city, at which election this ordinance shall be submitted to the qualified electors of the city for their approval; said election to be held and conducted in the manner prescribed by law and the ordinances of the city of Tampa; that inspectors shall be appointed and qualified as in the case of general elections in said city; and they shall canvass the votes cast, making due returns of the same to the city council within three days after said election. That at

said election the ballot shall be a plain piece of paper with the words 'For Bonding,' or 'Against Bonding,' written or printed thereon; and if a majority of the votes cast at said election shall be cast 'For Bonding,' then this ordinance shall be in full force, and said loan shall be negotiated, and said bonds shall issue as provided for in sections one, two and three of this ordinance; but should a majority of the votes legally cast at said election be 'Against Bonding,' then this ordinance shall be of no effect, and said loan shall not be negotiated, and said bonds shall not issue as hereinbefore provided."

Passed June 8th, 1894.  Approved by the mayor June 12th, 1894.

Chapter 3951 of the laws of Florida, approved May 31st, 1889, entitled "An act to provide for the creation of a board of public works for the city of Tampa, Florida, and prescribing its powers and duties," with which the said city ordinance is alleged to be in conflict, and by reason of which conflict the said election in favor of the issue of said bonds is claimed to be illegal and void, is as follows:

Section 1. That in addition to the offices now authorized by the charter of the city of Tampa, there shall be a board of public works; and the same is hereby constituted and established.  The said board of public works shall consist of three members, who shall be freeholders in the city of Tampa, and electors thereof. The said members composing and constituting the board of public works shall be appointed by the mayor and confirmed by the city council; *Provided, however,* That the names of the said members of the board of public works, as first appointed under this act, shall be sent to the council for confirmation at the first regular meeting of the said city council to be held in

July, 1889, at which time one member of the said board of public works shall be appointed to hold office for one year, or until his successor is appointed and qualified; one shall be appointed to serve for two years, or until his successor is appointed and qualified, and one shall be appointed to serve for three years, or until his successor is appointed and qualified; and in each and every year thereafter, at the expiration of the term for which any member of the board of public works was appointed and confirmed, the mayor shall nominate to the council one member of said board as hereinbefore provided, and in the event of the death, resignation or disqualification of any member or members of said board, the mayor shall, at the first ensuing session of the city council, nominate a successor or successors to such member or members.

SEC. 2. Neither the mayor nor member of the city council shall be eligible to membership in the board of public works. Each member of the board shall give bond, with not less than three sureties, to the satisfaction of the mayor and the city council, in the sum of not less than fifteen thousand ($15,-00.00) dollars, conditioned for the faithful performance of his duties and the proper disbursement of and accounting for all moneys coming into his hands in his official capacity, which sureties shall be required to justify, in the aggregate, to the amount of fifteen thousand ($15,000.00) dollars; and such bond shall, when approved by the mayor and city council, be filed with the city clerk, and be enrolled by him in a book to be kept for the purpose of enrolling all official bonds. The members of the board shall receive such compensation for their services as the city council shall decide upon.

SEC. 3 The board of public works shall hold regular meetings at least once in every two weeks, and as much oftener as the business entrusted to its care may require; two members of said board shall constitute a quorum for the transaction of business. The ayes and noes shall be called and entered upon a journal, upon the passage of every motion or order of any kind, and no resolution or order shall be adopted unless two votes are recorded in its favor. Said meetings shall be held at stated times, and no called meeting shall be held until notice of the called meeting shall have been given by the city clerk to each member, and no business shall be done at any called meeting unless such notice shall have been given.

SEC. 4. The board shall keep a complete record of all its proceedings, and a copy from its record, certified to by the clerk of the board, shall be competent evidence in all courts of the State.

SEC. 5. The board shall have exclusive power to employ such chiefs or heads of departments (except the chief of the fire department and assistant chiefs), engineers, clerks, superintendents, laborers and other persons as it may deem necessary for the execution of its duties, and to fix their compensation, and any of them may be discharged at any time by the board of public works at its discretion.

SEC. 6. The board of public works shall not elect, or employ, or appoint, or contract with the mayor or any councilman, or with any other city official.

SEC. 7. The board of public works shall have exclusive power and control over the construction, supervision, repairing, grading and improving of all streets, alleys, avenues, lands, public wharves and landings, market-houses and spaces, bridges, sewers, drains, ditches, culverts, canals, streams and water courses,

side-walks and curbing, and over the lighting of all such public places as may be deemed necessary within the corporation, and to fix and establish the grades of all streets and alleys, avenues and thorough'fares. The said board shall also have exclusive power, supervision and control over the construction, repairing, cleaning, 'lighting and heating of all public buildings, and over all public improvements of the city.

SEC. 8. The board shall have exclusive power to make all improvements and expenditures within the budget which shall cost less than two hundred dollars, but shall let all contracts of over two hundred dollars to the lowest responsible bidder.

SEC. 9. The board of public works shall, on or before the day fixed in each year, prepare and submit to the city council an itemized estimate of the amount of money necessary and advisable, in their opinion, to spend in the execution of the duties entrusted to them for the ensuing year, giving in detail the plans of construction and repairs, and estimates of expenditures and salaries, *etc.*, proposed by them, with the estimated cost of each improvement or salary, specifying for what department required, as streets, sewers, public buildings, waterworks, fire department, *etc.*

SEC. 10. It shall be the duty of the mayor and city council, in their annual levy of taxes, to make such levy as in their judgment shall be necessary and advisable for expenditure, under the direction of the board of public works, and the amount so levied or raised from taxes, bonds or other sources, shall be collected and carried to the credit of the board of public works, and shall not be diverted from said board or be used by the mayor and city council for any other purpose; but the same shall remain as a separate fund in the hands of the treasurer of the city, and the bond of

the treasurer shall be sufficient to recover any amount of the public moneys which may come into his hands. Said bond, before being approved by the city council, must have the approval of the board of public works. The board shall not divert the tax levy of the mayor and city council from the purposes or departments for which it was levied; *Provided, however*, That whenever the mayor, city council and board of public works find that there is a surplus in any of the special funds created by the tax levy or otherwise, the city council shall then have the power to carry the amount of said surplus into the general fund, to be expended for the best interests of the city.

Sec. 11. When the board shall deem it advisable to make a contract for the execution of any work, or for the purchase of any material for matters under its charge, to an amount exceeding five hundred dollars, a careful estimate shall be made in detail of the cost of such work or material, and the board shall transmit to the mayor and city council, with its recommendations, a resolution authorizing the said expenditures, with an estimate of the cost. Upon the passage by the mayor and city council of such resolution, it shall be the duty of the board of public works to advertise and let the work and material to the lowest responsible bidder.

Sec. 12. All contracts of the board shall be made in the name of the city, shall be executed in behalf of the city by the presiding officer of the board and attested by the city clerk, under the seal of the corporation, and shall be filed and recorded in the office of the board.

Sec. 13. No member of the board or other person whatever, in the employment of the board or otherwise, shall have power to create any liability on account of the board, or of the funds under its control,

except by express authority of the board conferring at a meeting duly and regularly convened.

SEC. 14. If at any time it shall appear, in the judgment of the board, that the levy made by the mayor and city council for the current or ensuing year for the use of the department of public works, is insufficient for properly conducting the affairs of the city, and for constructing improvements and repairs of such things as are committed to their charge, consistent with the comfort and convenience of the inhabitants, they shall so report to the mayor and city council, furnishing at the same time an estimate of such deficiency, on the receipt of which it shall be lawful for said mayor and city council, in their discretion, to make such additional appropriation and proceed to make a special levy, on the basis of the last assessment upon the taxable property of the city, taxable for State purposes, but not to exceed with the livies previously made during the year the limit provided by law.

SEC. 15. No member, officer, or employee of the board, nor the mayor, nor any councilman or other city officials, shall contract with the board of public works.

SEC. 16. No money shall be paid at any time to any person claiming under a contract with the board, until such person shall have first filed with the board his statement under oath declaring that no person forbidden by this act has any interest in the same.

SEC. 17. When, in the opinion of the board, it shall become necessary in the prosecution of any work to make alterations or modifications in such work, or in the specifications or plans of a contract, such alterations or modifications shall only be made by order of the board, and such order shall be of no effect until the price to be paid for the same shall have been agreed

upon in writing and signed by the contractor and approved by the board. The total cost of the work, with the addition so agreed upon, shall not exceed the original estimate, unless such addition shall be agreed to by the mayor and city council, with the same formalities as attended the presentation and consideration of the original estimate. No contractor shall be allowed anything for extra work caused by an additional alteration or modification, unless an order shall have been made, and an agreement shall have been signed, as is provided in the preceding section, nor shall he in any case be allowed more for such alterations than the price fixed by such agreement.

SEC. 18. The board shall publish all resolutions declaring the necessity of improvements and expenditures over five hundred dollars, and a resolution authorizing such improvements and expenditures over five hundred dollars must be passed by the mayor and city council, on the recommendation of the board of public works, before the expenditure can be authorized or the work be done.

SEC. 19. Any member of the board may be removed from office for incompetency, inefficiency, neglect of duty, or misconduct in office, by a vote of three-fourths of all the members elected to the city council. For the unexpired term such vacancy shall be filled by appointment of the mayor under the same rules as govern other appointments of members of the board. Upon specific charges, in writing and sworn to, being preferred against a member of the board of public works, the city council, by a majority vote of the board, may suspend such member for ten days, and within ten days after the order of suspension the charges shall be tried by the city council, unless the accused ask for further time. If a member of the board of public

works shall be adjudged on such trial or inquiry to have been guilty of the charge against him, the city council shall have the power to punish by a three-fourths vote of the whole board by dismissal from office, or by a majority vote on the call of the roll by further suspension, as in their opinion the grade of offense may deserve. The decision of the city council as to suspension or dismissal shall be transmitted to the board of public works to be entered on its record. Vacancies, whether by removal or suspension, occurring after trial of charges, as herein provided, shall be filled as in other cases, and the mayor shall have power to make temporary appointments to fill vacancies in the board of public works, if a trial as herein provided should be delayed at the instance of the accused.

SEC. 20. At the first meeting after their election the board of public works shall elect one of their number chairman, who shall serve as such for two years. If they fail to do so the mayor shall appoint one of their number, who shall be chairman for two years. The chairman shall cast his vote on all questions voted upon.

SEC. 21. The city clerk of the city shall be also the clerk of the board of public works. His duties as such clerk shall be to keep the minutes of all official acts of the board, and to do all other services usually pertaining to such office. He shall receive for his services as clerk such compensation as may be determined by the board.

SEC. 22. The board of public works shall in every year prepare and submit to the city council an itemized statement of its receipts and expenditures, which, when approved by the city council, shall be a ratification of the act, and be filed with the city clerk and published with the annual statement of city officers.

It is practically admitted in the argument here, and we think correctly so, that those provisions of the said city ordinance that provide that the proceeds of the bonds to be issued thereunder shall be deposited by the board of trustees who are to sell said bonds with some bank or banks by them to be selected, and that provide for the *expenditure* of the proceeds of said bonds by said board of trustees, and that provide for the payment of said moneys through said National banks if the city treasurer shall fail or refuse to give additional security for said moneys arising from said bonds, do conflict with the provisions of said Chapter 3951, that creates and clothes a board of public works for the city of Tampa as officials with the exclusive power and control over the construction, supervision and repairing of the public works of improvement in said city, the erection and construction of which are proposed as the object, purpose and necessity for the negotiation of the loan to be secured by said bonds. Wherever the provisions of said ordinance undertake to clothe the board of trustees therein provided for with any of the powers that devolve by the provisions of said Chapter 3951 of the State law upon the board of public works therein provided for, and wherever it undertakes to usurp for any bank or banks the powers and duties devolving by the law of the city's charter upon its treasurer, or any other of its officials, all such provisions of said ordinance are inoperative and void. But it is contended in favor of those provisions of said ordinance that conflict with the provisions of said Chapter 3951, in undertaking to usurp for the board of trustees of the former the powers and duties that belong to the board of public works of the latter, that said Chapter 3951 of the statute law, approved May 31st, 1889, has

been repealed by Chapter 3950, subsequently approved on June 5th, 1889, entitled "An act to amend an act entitled an act to abolish the corporations of the towns of Tampa and North Tampa, and to define the boundaries thereof;" and that if it was not repealed by the last-mentioned act, it was repealed by Chapter 4084 laws, approved June 8th, 1891; and if not repealed by either or both of the above acts, it was certainly repealed by Chapter 4085 laws, approved June 8th, 1891, or by Chapter 4086 laws, approved June 10th, 1891. Without prolonging this opinion to the unnecessary extent of mentioning and dissecting in detail the provisions of said several acts claimed to operate as a repeal of Chapter 3951 above, we deem it advisable to say simply that we have carefully and critically examined and compared the provisions of each and every of them, and we find no such inconsistency or conflict in any of the provisions thereof as would warrant the assertion that Chapter 3951 is, or was intended to be, repealed by any of them, and there is no express repeal of that chapter in any of them. There is no such inconsistency or conflict between the provisions of any of the mentioned chapters and Chapter 3951 as that the provisions of the latter act could not co-exist and be carried out at the same time that the provisions of the alleged repealing acts were executed. The chief argument urged in support of the contention that between them there is an irreconcilable conflict and a consequent repeal is, that these several charter acts, passed subsequently to Chapter 3951, clothe the city council with the same general powers that are delegated by Chapter 3951 to the city's board of public works, and that in this apparent lodgment of the same powers in two different bodies of municipal officers lies the conflict. There is nothing in this contention.

The powers conferred by these several acts upon the city council are general *corporate* powers delegated, through the council as the *legislative* branch of the city's government, *to the municipality* as a governmental corporation, to be exercised and carried out by the city council *legislatively* as contradistinguished from *executively*.   When the city council in their *legislative* capacity determine that any given corporate power falling within the *supervision* of the city's board of public works shall be set in motion or exercised *by the corporation*, they so *legislatively* direct and declare, then the official functions of the board of public works comes into action, and they, as the official *executive arm* of the city's government, carry the given power into active practical execution.   The council exercises the power for the municipality *legislatively*, the board of public works carries it out *executively*.   The duties of the two official bodies in connection with the same power are interdependent, not independent, the one upon the other; and, in the exercise of any given power within their respective spheres, there is not and need not be any conflict.   In Chapter 3951 there are no *corporate powers* conferred upon the *municipality* to be exercised by and through the board of public works therein created, but said board is simply therein made the *executive arm* of the city's government for the carrying out of certain corporate powers with which the city as a municipal corporation is otherwise clothed by law; whereas, in the several acts claimed to operate as a repeal of this Chapter, the corporate powers that such board are to actively carry out are initiatively conferred *upon the municipality itself* as much through the medium of its legislative arm, the city council.   Without these acts conferring the general power upon the *munici-*

*pality* in any given case, Chapter 3951, conferring upon the board of public works the duty of actively carrying out such power, would be entirely nugatory. As an illustration, section two of·Chapter 3950 confers upon the city council of Tampa the power to prescribe· and maintain a system of drainage and sewerage. Section seven of Chapter 3951 clothes the board of public· works of said city with the exclusive power and control over the construction, supervision and repairing· of said drains and sewers. If the *city itself* were not clothed with the corporate power to prescribe and maintain drains and sewers, then the power of construction, supervision and repair thereof in the board of public works as officers of the city would be nugatory.

Having seen that those provisions of this city ordinance that undertake to confer upon the board of trustees therein created the power to *expend* the· moneys arising from the sale of said bonds, and to deposit said moneys with a bank or banks by them to be selected, instead of with the treasurer of said city, are· illegal and void, it now remains to be seen whether any part of said ordinance is legal, and whether the valid parts thereof are so separate and complete within and of themselves, independently of the features thereof found to be invalid, as to authorize the issue, negotiation and sale of the bonds therein provided for. It is now abundantly settled, we think, by· the great weight of the authorities that a municipal ordinance, like a legislative statute, may be good in part and upheld, while part thereof may be adjudged to be illegal and void, provided the void parts thereof are not so connected with or essential to the completeness of the valid parts as that the latter can not stand alone or be carried out independently of and without·

the void provisions, or unless the different parts of the ordinance are so interdependent or blended together that it can not be fairly said that the Legislature would not have adopted the one without the other. 1 Dillon on Municipal Corporations (4th ed.), sec. 421 and citations; Bishop on Statutory Crimes (2nd ed.), secs. 26, 34 and citations; The King vs. The Company of Fishermen of Faverham, 8 Term Rep. 352; Villavaso vs. Barthet, 39 La. Ann. 247; Commonwealth vs. Dow, 10 Met. 382; State vs. Hardy, 7 Neb. 377.

It must be observed that the only charge of illegality made in the bill against the election held upon the question of the issue of said bonds, and against the validity of the said ordinance authorizing and calling said election is, that "the said election and said ordinance are void for the reason that if the said bonds are issued and sold under and by virtue of said ordinance and said election, the *funds arising from the sale thereof* will be unlawfully diverted from their proper and legal channel, and the same will be taken charge of, spent and used by a body of men so-called trustees, who have not and can have no legal authority or right to take possession of said bonds, or to receive or control the same, or to sell and dispose of the same, or to expend the proceeds arising from the sale of said bonds, or any part thereof, although said ordinance undertakes and attempts to confer such authority and power upon the said trustees so-called." This is the *sole assault* in the bill upon the validity of the election and upon the ordinance authorizing and calling same. There is no charge that there was anything wrong or illegal in the election itself, or in the conduct thereof, or that it resulted otherwise than in favor of the issue of said bonds, or that the city had no legal authority to bond itself with the sanction of the elec-

tors expressed through an election, or that the proposed issue of bonds is far too large an amount, or in excess of the amount to which the city is limited by law in creating a bonded indebtedness, or that the corporate purposes and objects to which the proceeds of said bonds are proposed to be applied are *ultra vires*, or the proposed terms, provisions or conditions of said bonds, or the rate of interest they are to bear are at all illegal. Nothing of this kind is alleged in the bill; in fact it makes no assault whatever either upon the *election* itself or upon the *bonds* proposed to be issued and sold, or upon the corporate objects to which the proceeds of the bonds are to be devoted. The sole grievance of the bill is, that under this ordinance the *proceeds* or *money* arising from the sale of said bonds will be put into the hands, *for expenditure*, of an illegally constituted body of trustees.

Turning now again to the ordinance providing for the issuance of the bonds and submitting the question of the necessity of such issuance to the vote of the people, we find the authority of the city of Tampa for negotiating loans and issuing bonds therefor to be contained in the following section 9 of Chapter 3779 laws, approved June 2d, 1887; *viz:* "That the city council shall have power to negotiate loans and issue bonds therefor whenever by a majority the voters of the city determine that the same is necessary for the benefit or improvement of the city; provided, that the amount of bonded indebtedness shall never exceed twenty *per cent.* of the appraised value of the property of said city." What question, pure and simple, were the city council *authorized* or *required* to submit to the vote of the people under this law as a condition precedent to their exercise of the power conferred upon them to negotiate loans and issue bonds therefor?

The answer seems obvious, that the council simply had to propose the naked question of the *amount* of the loan to be negotiated and the corporate purposes and objects to which it was to be applied, and the terms and conditions upon which it was to be contracted, and if these questions were properly submitted to the people, and if a majority of their votes were in favor of the loan, and the issue of bonds to secure it, the condition precedent to the exercise by the city council of the power to negotiate the loan and issue bonds to secure it has been fully complied with. With the details of such questions, as through what particular individuals' hands the moneys from such loan shall pass or be *expended* after it becomes the property of the city, the voters of the city, as such, have nothing whatever to do. It was unnecessary and improper to have submitted any such question for their sanction through an election, and because any such illegal proposition was mixed up with and presented for their sanction along with other questions upon which they had a right to vote does not and should not render their decision void upon the main question submitted to them, and in which alone they had a voice. The power of the voters in such cases is purely statutory, and they have no voice in any other matter than that the statute authorizes to be submitted to them. State *ex rel.* vs. County Court of Daviess County, 64 Mo. 30. The provisions of this ordinance, to the effect that the moneys arising from the proposed loan should be *expended* by the board of trustees, and should be deposited in banks, *etc.*, dealt with matters that could arise only *subsequently* to the issue and sale of the bonds, and we can not see how the illegality of such provisions, though submitted to the people along with the main question in which alone they had a right to be

heard, can or should operate to vitiate their decision that the necessity existed for such loan, and the proposed issue of bonds to secure it. The ordinance, with these illegal provisions taken out of it, is left fully operative and complete; independently of and disconnected from said illegal features it submits fully to the people for their vote of approval or rejection the matters *authorized* and *required* by law to be submitted to them; the issue of the bonds proposed thereby are for proper and legitimate corporate objects and purposes that the city is empowered to deal with, construct and maintain at the city's expense; and the illegal features of the ordinance relate to matters that must of necessity arise *subsequently* to the issue and complete sale of the bonds, that can now or hereafter be rectified by the city council by the enactment of other proper and legitimate provisions for the *expenditure* and *safe-keeping* of the funds that shall come to the city's hands from the sale of said bonds, without affecting the contract of loan, or the election held to authorize the same. Yesler vs. City of Seattle, 1 Wash. 308, 25 Pac. Rep. 1014. Because the *proceeds* of the loan and bonds are threatened *in advance* with being *expended* by improper hands, or *deposited* with the wrong keepers certainly can not be held to vitiate the contracting of the loan or the issue of bonds to secure it, if all the legal prerequisite steps have been taken leading up to such bond issue. It is well-settled that municipal corporations have the power to appoint *agents* for the performance of such duties for it as are of a purely ministerial or administrative character. 1 Dillon on Municipal Corporations, sec. 96 and citations; 15 Am. & Eng. Ency. of Law, p. 1044 and citations. The receiving of the bonds after they shall have been executed by the proper officers, and the sale of

the same for current funds at par, and delivering the proceeds to the proper city official or officials, are duties purely ministerial in their character, and there is no reason why the city council can not in some proper manner appoint a fiscal agent or agents to perform these ministerial duties for it. And it may be done now or at any time after the issue of such bonds, but the city can not appoint four of such agents for itself, and authorize them to choose and designate for it a fifth man, as is attempted to be done by this ordinance; the maxim, *delegata potestas non potest delegari*, will apply in such cases.

The prayer of the bill is, that the city may be restrained from issuing, selling, delivering, pledging or otherwise disposing of any of the said bonds, and the injunction granted and appealed from conforms to this prayer. As we have seen, there is nothing exhibited in this bill showing any illegality in the proposed issue of bonds, or in the bonds themselves, or in the election called and held to sanction their issue, or in the power of the city to issue them for the objects proposed, but that nothing more is set up than that the *proceeds* thereof will be dealt with, not improperly or wrongfully, but by the wrong hands. There is nothing shown that affects the legality of the proposed issue, negotiation, sale and delivery of the bonds themselves, except that when issued they are to be sold by improperly authorized agents of the city.

It follows, from what has been said, that the decree appealed from must be so modified as that it shall only restrain the delivery of the bonds to the trustees as at present appointed by said city ordinance for negotiation and sale, and so that the proceeds thereof shall

not be received or be expended by such trustees, or be deposited by them with any banks as proposed by such ordinance, and it is so ordered.