# DECISIONS

## OF THE

# Supreme Court of Florida

## JUNE TERM, A. D. 1900

WILLIAM C. MIDDLETON, HENRY H. WILLIAMS, ERSKINE REYNOLDS, HETH CANFIELD AND THE W. LYON COMPANY, A CORPORATION ORGANIZED UNDER THE LAWS OF FLORIDA, APPELLANTS, VS. THE CITY OF ST. AUGUSTINE, A MUNICIPAL CORPORATION OF THE STATE OF FLORIDA, ELMER E. BOYCE AS MAYOR, AND PETER S. ARNAU AS CLERK THEREOF AND BARTOLA GENOVAR, R. J. OLIVER, BERNARD MASTERS, A. L. ROGERO AND J. A. McGUIRE, CONSTITUENT MEMBERS OF AND COMPOSING A BODY KNOWN AS THE BOARD OF BOND TRUSTEES OF SAID CITY, APPELLEES.

Constitutional Law—Curative Acts—Municipal Bonds For Public Lighting Plants.

1. Under the provisions of Section 8 of Article VIII of the Florida constitution of 1885, the legislature has the power to authorize municipal corporations, through their properly constituted corporate authorities, to erect and own electric light plants for supplying lights to their citizens or inhabitants, and to issue and sell bonds for such purpose, either with or without the sanction of their individual citizens or taxpayers, as expressed through an election.

2. The rule in respect to statutes curing defects in legal proceedings, where they amount to mere irregularities, not extending to matters of jurisdiction, and in the absence of constitutional limitations, is that "if the thing wanting, or which failed to be done, and which constitutes the defects in the proceeding, is something the necessity for which the legislature might have dispensed with by prior statute then it is not beyond the power of the legislature to dispense with it by subsequent statute; and if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law."

3. The force or validity of a curative act, enacted subsequently to the institution of a suit based upon the defects and irregularities intended to be cured by such act, but prior to judgment in such suit, is not affected by such suit.

4. Special or local legislation, affecting cities and towns under section 8 of Article VIII of the constitution of 1885, is not controlled by the proviso to section 21 of Article III but may be enacted at any session of the legislature, and without the notice required by such proviso.

5. Where the legislative authority to a municipality, and the municipal ordinance passed in pursuance thereof, to issue city bonds confines the place of payment of the interest coupons of such bonds to a specific place, it is a material variance and departure from the authority conferred to issue bonds providing for the payment of their interest coupons at any other place than the one so specified, and in such a case it is proper to restrain the issue so proposed.

Appeal from the Circuit Court for St Johns County.

*Statement.*

The Charter of the city of St. Augustine (Chap. 4636 laws of 1897) grants the city power to purchase, lease, acquire, receive, hold and sell, let or otherwise dispose of property, real, personal and mixed, when necessary for municipal purposes, or specially authorized by charter (Sec. 2, Art. 1); provides that the legislative power of the city shall be vested in the city coun-

cil (Sec. 1, Art. 6); that the mayor and city council shall have power by ordinance to light the city and its streets, avenues and public buildings with gas or other means of illumination; to acquire, construct, establish, maintain and keep in repair all buildings and property necessary for municipal purposes (Sec. 3, Art. 6); and by section 4, Article 7, that "the mayor and council of the city of St. Augustine in their corporate capacity are hereby authorized to issue from time to time bonds of said city of such denomination, bearing such rate of interest, not exceeding five per cent., and becoming due in such time and upon such conditions as may be determined, to an amount not exceeding in the aggregate fifteen per cent. of the assessed value of taxable property of said city at the time of issue; provided, that none of said bonds shall be issued except for the following purposes: Funding the floating debt of the city, purchase or erection of a market house or city hall, improving the public streets, for sewerage, and for illuminating said city. Provided further, that before the issue of said bonds shall be made, the issuance of the bonds proposed to be issued at any time shall be provided for by ordinance expressing in exact terms the amount and the purposes for which said issue of bonds are to be used, and subsequently approved by a majority of the vote cast by the freeholders of said city, who are qualified to vote as shown by the registration and tax books of said city, at an election held for that purpose, at a time and in a manner prescribed by the city ordinance." Chapter 4600, enacted at the same session of the legislature, empowers cities and towns generally to own, construct and operate gas plants and

electric light plants and to issue bonds for that purpose in accordance with its provisions.

In March, 1899, the city council of St. Augustine passed an ordinance which was approved March 9th by the president of the city council as acting mayor, as follows:

### AN ORDINANCE.

Establishing an Electric Light Plant to be owned and operated by the City of St. Augustine, and to provide for the issue of bonds for the payment of same.

*Be it ordained by the City Council of the city of St. Augustine, Florida:*

Section 1. That the mayor is hereby directed to issue his proclamation calling an election to be held the 28th day of March, 1899, to determine by a vote of the majority of the qualified voters of said city, who shall be freeholders of said city actually voting, whether or not the bonds proposed by this ordinance shall be authorized and issued.

Sec. 2. The mayor and city council of the city of St. Augustine in their corporate capacity, and as and for the said corporation, shall issue from time to time bonds of said city in denominations of one hundred dollars ($100), and five hundred dollars ($500). The said bonds shall be payable in gold of standard weight and fineness, twenty years after the date thereof, and shall bear interest at the rate of five (5) per cent. per annum, payable semi-annually at the city of St. Augustine, and shall have interest coupons attached thereto, payable at the periods of six months from the date of said bond. Said bonds shall be prepared under the direction of the

mayor and the city council, and shall be signed by the mayor, the president of the city council and the city clerk, and shall bear the corporate seal of the city of St. Augustine, and shall be issued, sold and delivered in amounts as the proceeds are needed to pay the improvements contemplated; and the proceeds shall be applied for the purposes for which such issues of bonds is authorized. If the entire issue of twenty thousand ($20,-000) dollars of bonds, as provided herein and submitted to be approved by a majority of the qualified voters, who shall be freeholders and voting as aforesaid, be authorized at said election, then the entire issue so proposed may be from time to time sold and delivered as the proceds are needed.

Sec. 3. For the payment of the principle and interest of the bonds issued under this ordinance, the electric light plant of the city of St. Augustine is hereby especially pledged as security, and the entire taxable property in said city is also pledged. The mayor and city council shall annually levy such special tax on the taxable property within the corporate limits of said city as may be necessary to pay the interest on said bonds and provide a sinking fund for the payment of said bonds, and may from time to time, by ordinance, require of the disbursing agents handling the moneys hereby provided for, such bonds for the faithful performance of their duties as may be necessary to protect the interests of the city. The special tax levied for the the interest and sinking fund shall be collectable only in lawful money of the United States, or in past due coupons of the said bonds, and when collected shall be solely applied to the payment of interest and the forming of a sinking fund to meet the principal of said bonds.

Sec. 4. The board of bond trustees for the water works system of the city shall receive the said bonds as soon as the same are prepared and executed, and sell the same at not less than par, and dispose of the proceeds as provided by ordinance. Said trustees and their successors shall control the moneys arising from the sale of said bonds, and faithfully apply the same to the purposes for which authorized, and to no other purpose, and they shall have exclusive control and direction over the construction, maintenance and operation of the electric light plant which may be constructed or put in operation by and under the provisions of this ordinance, and over the electric light plant buildings, grounds, until the payment of the bonds hereby provided for, and the rents, proceeds, profits and issues thereof, after paying necessary and legitimate expenses of operating, improving and perfecting the same, shall be by them turned over to the city treasurer on account of redemption fund for said bonds, to be applied to the payment of the principal and interest of said bonds.

Sec. 5. For the purpose of supplying the city and its citizens with light by means of an electric light plant, the issuance of bonds to the amount of twenty thousand ($20,000) dollars is proposed and provided for. At the election to be held on the 28th day of March, A. D. 1899, the question of the issuance of bonds to the said amount of twenty thousand ($20,000) dollars, and for said purpose, shall be so submitted to the qualified voters of said city, who shall be freeholders of said city, that each voter shall have an opportunity to vote for or against the issuance of bonds for such purpose. The qualified voters of said city, who shall be freeholders of said city, desiring to vote at said election, shall each cast one paper ballot. The city

council of said city shall cause to be printed ballots, substantially in the following form :

Official ballot, election March 28th, A. D. 1899, Ward No. — (Ward to be printed), City of St. Augustine.

Make a cross mark (x) before the proposition to issue bonds if you favor such issue; otherwise make a cross mark (x) before the proposition against the issue of bonds.

For the issuance of bonds to erect an electric light plant to the amount of twenty thousand dollars ($20,000). Yes.

Against the issuance of bonds to erect an electric light plant to the amount of twenty thousand dollars ($20,000). No.

Each voter desiring to vote for the issuance of bonds for the purpose of supplying the city with light by means of an electric light plant, to the amount of twenty thousand dollars ($20,000) shall make a cross mark (x) in front of the proposition favoring the issue of said bonds; and each voter desiring to vote against the issuance of bonds for said purpose shall make a cross mark (x) in front of the proposition against the issuance of said bonds.

If a majority of the qualified voters of said city, who shall be freeholders of said city, actually voting at said election, shall cast ballots in favor of the issuance of said bonds, there shall be issued bonds for the purpose of supplying the city with light by means of an electric light plant, to the amount of twenty thousand ($20,000) dollars or so much thereof as may be deemed by said trustees to be necessary for that purpose, but if a majority of such voters so voting do not cast ballots with such words written or printed thereon, then and in that

event no bonds shall be issued for that purpose. At said election each qualified voter of said city shall have the right to vote, and no person shall vote at such election, unless he be a qualified voter of said city and a freeholder of said city, and any person voting or attempting to vote at said election who is not a qualified voter of said city and who is not a freeholder of said city, shall be punished by a fine of not more than one hunderd dollars, or imprisonment not exceeding sixty days, upon the conviction thereof before the municipal court of said city

Sec. 6.    If the use of the full amount of bonds authorized to be issued for said designated purpose shall be deemed by said trustees to be inadvisable, then the surplus of said bonds in the hands of the trustees shall not be sold, but shall be cancelled by the trustees and delivered to the city council and publicly destroyed, and any other or further issue of bonds for such purpose shall not thereafter be made by virtue of this ordinance, or the vote of the voters at said election.

Sec. 7.    The mayor shall cause the publication of a proclamation calling said election, together with this ordinance, daily for at least ten days net prior to the date of said election, in a newspaper published in the city of St. Augustine.    The city council shall, at least three days before the day of said election, appoint three inspectors and a clerk of election to hold said election in each ward of the city.    If any inspector or clerk of election named by the city council fails to attend at the proper polling place at the time for opening of the polls on the day of election, those inspectors present shall fill the vacancy, and if all the inspectors and clerks be absent, then those persons present qualified to vote shall fill the vacancies. The polls shall be opened and closed at

the times appointed by law for the State elections, and shall be located at or near as practicable to the polling places used in the last city election. The inspectors and clerk of election in each ward shall make out and sign duplicate returns of said election upon blanks prepared and furnished therefor by the city council, showing the number of persons voting at said election, and the number of votes cast respectively for and against said purpose, and shall deliver one copy thereof to the mayor and one copy to the city clerk for the city council. As soon as practicable after said election, the city council shall meet and canvass and declare from the said returns of the inspectors and clerks of election the results of said election, and same shall be recorded among the records of the proceedings of the city council. Said election shall in all other respects be conducted as nearly as may be in compliance with the laws and ordinances regulating the holding, returning, certifying and canvassing of city elections.

Sec. 8. This ordinance shall go into effect as soon as published."

The acting mayor issued his proclamation calling an election in pursuance of the provisions of the ordinance to be held March 28, 1899, to determine whether or not the bonds proposed by the ordinance should be issued the amount and for the purpose provided thereby. The election was held and a majority of the votes cast were in favor of the proposition submitted. Thereafter, on May 6, 1899, another ordinance was passed, and approved by the president of the city council as acting mayor, for the purpose of carrying into effect the provisions of the ordinance of March 9th, reciting that an election was held under the provisions of the latter ordinance to determine whether or not the bonds

proposed should be authorized and issued to the amount and for the purpose provided thereby; that at said election the issuance of the bonds was approved by a majority of the votes of those qualified voters who were freeholders of the city; and that by the ordinance of March 9th the issuance of bonds to the amount of $20,000 was provided for, but that the purpose for which said issue of bonds was to be used is in said ordinance expressed in general terms. Section 4 of this ordinance prescribes the forms of the bonds to be issued with the coupons to be attached. The form prescribed for those of the denomination of $100 is as follows:

UNITED STATES OF AMERICA.

No. ....         STATE OF FLORIDA,         $100.00

DEVICE.

———

City Gates.

———

CITY OF ST. AUGUSTINE.

Electric Light Plant Bond. Interest five per cent. per annum, payable semi-annually.

Secured by pledge of the entire taxable property of the City of St. Augustine, real and personal.

Secured by the special pledge of the Electric Light Plant of the City of St. Augustine.

The City of St. Augustine, in the State of Florida, will pay to the bearer at the office of the city treasurer in the city of St. Augustine, or at the National Union Bank, in the city of New York, or at such other fiscal agency in the city of New York as may be hereafter appointed by the government of the city of St. Augustine, on the 1st day of September, A. D. 1919, the sum of one hundred dollars in gold coin of the United States of America, with interest thereon at the rate of five per cent. per annum, payable semi-annually in like gold coin on the first day of March and September of each year at the office of the city treasurer in the city of St. Augustine, or at the National Union Bank in the city of New York, or at such other fiscal agency in the city of New York as may be hereafter appointed by the government of the city of St. Augustine, on presentation and a surrender of the annexed interest coupon as they severally become due and payable.    This bond is one of series aggregating twenty thousand dollars of like date, known as Electric Light Plant Bonds as of the city of St. Augustine, issued under and in accordance with the provisions of an ordinance of said city of St. Augustine, entitled "An ordinance establishing an electric light plant to be owned and operated by the city of St. Augustine, and to provide for the issue of bonds for the payment of same," approved March 9th, 1899, and published March 11th, 1899, which ordinance and the issue of which bonds were approved by more than a majority of the votes cast at a special election duly called and held under the provisions of said ordinance on the 28th day of March, 1899, and in pursuance of ordinances to carry into effect the provisions of the foregoing ordinance.    It is hereby certified that the

issue of bonds, of which this is one, is made   in   strict conformity with the laws of the State of Flordia and or- dinances of the, City of St. Augustine, duly authorizing the same, and that all proceeedings and things essential to the validity of this bond have duly happened and been performed and all requirements of laws and ordi- nances have been fullly complied with by the proper of- ficers in the issuance of this bond.

In testimony whereof the city of St. Augustine has issued this bonds bearing date the 1st day of Septem- ber, A. D. 1899, and has caused it to be singned by the mayor of said city and by the president of the city coun- cil and the city clerk thereof, under the seal of the cor- poration.

............................................
            Mayor of the City of St. Augustine.

............................................
    President of the City Council of the City of
                                    St. Augustine.

............................................
        City Clerk of the City of St. Augustine.

Countersigned and registered in   compliance   with the ordinance of the City of St. Augustine, Florida, this ........ day of .............., A. D. ........

| | |
|---|---|
| Seal of Board of Bond Trus- tees of the City   of St. Augustine, Florida. | ....................<br>Chairman.<br><br>....................<br>Secretary.<br><br>....................<br>Member. |

Board of Bond Trustees of the City of St. Augusine, Florida.

### Form of Coupon.

This coupon, after maturity, is receivable at par for all taxes and dues payable to the city of St. Augustine.

City of         ·$2.50         St. Augustine,

### State of Florida.

Will pay the. bearer at the office of the city treasurer, in the city of St. Augustine, or at the National Union Bank in the city of New York, or at such other fiscal agency in the city of New York as may be hereafter appointed by the government of the city of St. Augustine, two dollars and fifty cents in United States gold coin, on the ........ day of ............... A. D. ........ being six months' interest on Bond number ........, coupon number ........

...................,

City Treasurer.

The form prescribed for those of the denomination of $500 is substantially the same except as to the amounts, and need not be given in full. We notice, however, that in this form the bond is made to fall due September 1st, 1899, instead of 1919, but as no point is made on it in this court we infer that the date given is a clerical error in the record, and that the. form given in the ordinance states the date as September 1, 1919. The other sections of the. ordinance are as follows:

Section 1. That the mayor and city council, acting for the said corporation, shall have prepared, and shall issue from time to time, five per cent. coupon bonds of the city

of St. Augustine, to be known as Electric Light Plant Bonds of the city of St. Augustine, to the amount of twenty thousand dollars, fifty bonds of the denomination of one hundred dollars each, and thirty bonds of the denomination of five hundred dollars each, and payable twenty years after the date thereof, at the city of St. Augustine or at New York City, bearing interest at the rate of five per cent. per annum, payable semi-annually, with interest coupons attached thereto, payable at the ends of periods of six months from the date of the bond. Said bonds shall be prepared under the direction of the mayor and the city council, shall be signed by the mayor, the president of the city council and the city clerk and shall bear the corporate seal of the city of St. Augustine, and the coupons shall bear the engraved signature of the city treasurer, and shall be issued, sold and delivered in amounts as the proceeds are needed to pay for the improvements contemplated. *Both principal and interest shall be made payable in United States gold coin.*

Sec. 2.    The board of bond trustees at the city of St. Augustine shall receive the said bonds as soon as the same are prepared and executed, and sell the same at not less than par, and dispose of the proceeds as provided by ordinance.   Said trustees and their successors shall control the moneys arising from the sale of said bonds and faithfully apply the same to the purposes for which authorized, and to no other purpose, and they shall have exclusive control and direction over the construction, maintenance and operation of *the electric light plant which may be constructed, or put in operation by and under the provisions of this ordinance,* and over the electric light plant buildings and grounds, until the payment of the bonds hereby provided for, and the rents, proceeds profits, and issues thereof, after paying the nec-

essary and legitimate expenses of operating, improving and perfecting the same, shall be by them turned over to the city treasurer on account of redemption fund for said bonds to be applied to the payment of the principal and interest of said bonds.

Sec. 3. That said bonds shall be made payable to bearer, and shall be delivered by said trustees only after being countersigned by the chairman and secretary and one other member of the board of trustees, with their seal attached; whereupon said bonds shall become payable to the lawful bearer thereof. Said bonds shall be, as soon as prepared, delivered to the said board of trustees. . It shall be the duty of the trustees, when any bond is sold or issued by them, to register the same in a book to be kept for that purpose.

Sec. 5. The city treasurer, the treasurer of said board of bond trustees and the city's other agents or officers collecting or receiving money from any assistant, tax or any other source to be applied to the payment of said bond, or any of them, or to the sinking fund or interest thereon, or to any portion thereof, shall each make on the first day of each and every month written report in duplicate of the amount of money collected or received for such purpose, from whom, when collected or received, and the amount collected or received from each person, and of all payments by him under the provisions of the said ordinance and the amendments thereto; such report must embrace a detailed exhibit of all coupons collected, received, paid or taken by such officer or agent, stating particularly the date when each coupon has been collected, received, taken up or paid, and the number of the bond from which the several cupons are detached, and the amount and date of maturity of each; also a statement of all bonds redeemed, paid or purchas-

ed, with number and amount of each bond, the date of redemption, payment or purchase, from whom received, and the amount paid for each. One of the said reports shall, on or before the third day of the same month, be filed with the city clerk and the other with the secretary of the trustees provided for in said ordinance.

Sec. 6. It shall be the duty of the city treasurer or other agent or officer receiving or accounting for bonds or coupons redeemed, paid or purchased, to cancel the same when received, in the presence of the person from whom he shall receive them, and to deliver all such bonds and coupons to the said trustees together with his report above mentioned each month.

Sec. 7. The city treasurer, by and with the advice and direction of the city council, from time to time shall apply all the moneys which may come into his hands as redemption or sinking fund to the purchase of said bonds at their market value, or shall under the same direction, invest the same money in bonds of the United States, or the State of Florida, as may seem to said city council most advisable.

Sec. 8. It shall be the duty of said board of bond trustees on or before the first day of October of each and every year, to report to the city council the number and amount of said bonds outstanding, with an estimate of the amount necessary to be raised for interest and sinking fund, which statement and estimate shall serve as a basis of assessment by the city council for the ensuing year.

Sec. 9. And whereas, It is the purpose of said ordinance that the trustees aforesaid shall guard the interest of the holders of said bonds as well as of said city; be it further ordained that the said board of trustees shall have the power, and it shall be their duty, to

inspect at their discretion all books and accounts of offi-
cers or agents of the city of St. Augustine any manner
with the enforcement of any of the provisions of said
ordinance, and to require reports from them, and to en-
force the proper performance by said officers and agents
of their duties in so far as they relate in any wise to the
rights and interests of the holders of said bonds, or to
the faithful, just and proper administration of the funds
collected and received by them for the payment of the
principal or interest of the bonds.

Sec. 10.    For the additional    protection    of   the
holders of said bonds, and the    speedier    redemption
thereof, be it further ordained, that upon the failure of
the city of St. Augustine to meet any of the interest cou-
pons or principal of said bonds within ninety days after
maturity and demand of payment, then the entire elec-
tric light plant and all other public property of the city
capable of yielding revenue shall be taken into posses-
sion and be operated and controlled under the direction
of said trustees, and its successors, until the payment of
all such moneys due upon said bonds, and the rents and
proceeds, issues and profits thereof, after paying the nec-
essary and legitimate expenses of operating the same,
shall be by them turned over to the city treasurer on ac-
count of redemption fund for said bonds, to be applied
to the payment of the principal and interest of same.

Sec. 11.    That the finance committe of   the   city
council shall be authorized and have full access to the
books of the bond trustees during the construction and
building of said electric plant, and examine books and
bills and cost of material, etc., during the progress of
said work, and make a report and submit the same to
the city council once a month until the plant is com-
pleted, then all subsequent reports shall be made by the

secretary of the bond trustees and submitted to the council at the first regular meeting after the first day of each and every month, giving a complete and detailed report of all revenues derived from said plant and also give amount of expenditures during said month, with the proper vouchers and bills paid, in duplicate.

On April 26, 1899, appellants, with another as to whom the cause was subsequently dismissed, filed their bill in equity in the Circuit Court of St. Johns county against the city, its acting mayor and clerk, seeking to enjoin the issuance of the bonds. While this bill was pending the legislature enacted Chapter 4866, approved May 11, 1899, as follows:

AN ACT to Legalize the Election Held on March 28th, 1899, in the City of St. Augustine, to Determine by a Vote of the Majority of the Qualified Voters of said City, Who Were Freeholders of said City Actually Voting Whether or Not the Bonds Proposed by an Ordinance Entitled "An Ordinance Establishing an Electric Light Plant to be Owned and Operated by the City of St. Augustine, and to Provide for the Issue of Bonds for the Payment of Same," Passed March 8th, 1899, and Approved March 9th, 1899, Should be Authorized and Issued, and to Declare and Render Valid Said Election and the Result as Shown by the Returns Thereof and to Declare and Render Valid Said Ordinance and to Authorize the Issue of Bonds as Provided by said Ordinance.

Whereas, the authority is given by Chapter 4636 of the Laws of Florida to the city of St. Augustine to issue bonds for illuminating said city, and said city is further authorized to light the city and streets, avenues and public buildings with gas or other illuminating material; Provided, the issuance of the bonds proposed to be is-

sued shall be provided for by ordinance expressing in exact terms the amount and purposes for which such issue of bonds are to be used and subsequently approved by a majoriuty of the vote cast by the freeholders of said city who are qualified to vote as shown by the registration and tax books of said city ; and,

Whereas, An ordinance was duly passed March 8th, 1899, and approved March 9th, 1899, and was regularly published and became an ordinance of said city in the regular way, entitled "An Ordinance. Establishing an Electric Light Plant to be Owned and Operated by the city of St. Augustine. and to Provide for the Issue of Bonds for the Payment of same ;" and

Whereas, A proclamation was duly issued and published as provided by said ordinance calling an election which was held March 28th, 1899, resulting in a majority of the freeholders of said city who were qualified to vote as shown by the registration and tax books of said city, approving the issue of bonds as provided for in said ordinance ; and,

Whereas, It is important that no question should arise as to the validity of said ordinance. and of said election, or as to the validity of the bonds provided for in said ordinance and which may be issued in pursuance thereof, and of the said authority ; therefore,

*Be it Enacted by the Legislature of the State of Florida* :

Section 1.    That the said ordinance hereinbefore mentioned and the said election held on the 28th day of March, 1899, in pursuance thereof, be and the same are hereby legalized and declared to be valid and binding in every respect.

Sec. 2.    The said city of St. Augustine is hereby authorized to proceed with the issuance of bonds to the·

20

amount of $20,000, as provided in and by said ordinance, and in manner and form and in accordance with such ordinances hereafter passed not in conflict with said ordinance, and the bonds of said city of St. Augustine issued in pursuance of such ordinance and such ordinance or ordinances as may be passed in connection therewith, are hereby declared to be valid in manner, form and effect as issued, and to be binding and to have full force, virtue and effect in law and equity against the city of St. Augustine, the electric light plant and system of said city, and the entire taxable property therein, and bind said city as aforesaid for the payment of the principal sum and interest theeron; Provided, That the said bonds shall not be sold below par and in contravention of said ordinance authorizing their issue as to the amount of issue and time of payment. The fact that said bonds are to be payable in gold of standard weight and fineness shall not affect their vadility, and such contract is hereby declared to be valid and binding upon said city in accordance with the wording of said bonds.

Sec. 3.     The provisions of this act shall be construed remedial and curative of any defect or want of power upon the part of the municipality of the city of St. Augustine to pass, ordain and adopt said ordinance or to hold said election and conduct the same in the manner the same was held and conducted and declared the result, and to arrive at such results through the votes of those who voted at said election and hereby legalizes said ordinance and said election and said approval of the issuance of said bonds and said bonds which may be issued in pursuance of said ordinance, in so far as the constitution of the State of Flordia permits and the legislature has power.

Sec. 4.   All laws in conflict with this act are hereby repealed.

Sec. 5.   This act shall take effect immediately after its passage and approval by the Governor.

Approved May 11, 1899.

Thereafter, on June 20, 1899, the same complainants by leave of court filed an amended and supplemental bill in the cause against the same defendants, alleging that complainants were owners of large amounts of real and personal property situated in the city subject to taxation by it; that a pretended election was held on March 28th, 1899, under the provisions of the ordinance of March 9th, and that according to the returns of said election one hundred and seventy-nine votes were cast, one hundred and fourteen approving and sixty-five disapproving the issue of bonds.   Upon information and belief it was alleged that some twenty-five or thirty votes were cast by persons who were not freeholders of the city; that less than thirty of the persons voting had paid their poll taxes for 1898; that only four votes were cast by persons who had paid their poll tax for the two years next preceding the year in which the election was held on or before the second Saturday of the month immediately preceding the election, and that none of the persons voting at the election were exempt from the payment of the poll tax.   It was further alleged that at the time the election was held the existing law of the State pertaining to the qualifications of electors in State and county elections, which by the city's charter prescribed the qualifications of electors in all city elections except as to registration by the county supervisor of registration, precribed that no person should be entitled to vote at any election who should have failed to pay at least on or before the second Saturday in the month pre-

ceding the day of such election his poll tax for the two
years next preceding the year in which such election
should be held, and further prescribed that only
such persons who shall have paid such taxes shall be
deemed qualified voters authorized to vote at any gen-
eral, special or municipal election; that the second Sat-
urday of the month preceding the day of said election
was February 11th, 1899; that the ordinance of March
9th was passed in council on March 8th, first published
on March 11th, and first went into effect
March 14th, 1899; that by its terms it was impos-
sible for the freeholders electors of the city to qualify
themselves to vote at the election required to be held
within seventeen days from the first publication of the
ordinance, after the ordinance was published and after
proclamation of the proposed election; and that at the
date of the election there existed no general ordinance
prescribing the notice to be given for holding special
elections except elections to fill vacancies in elective
city offices, but by the laws of Florida, it was provided
that notice of elections in the city was to be proclaimed
by the mayor once a week for a period of four weeks
prior thereto; that the penalty prescribed by section 5
of the ordinance of March 9th deterred a large number
of the freeholders of the city who desired to vote at the
election from offering to vote thereat; that a large num-
ber of freeholders of the city who were otherwise quali-
fied electors thereof who desired to vote were deprived
of that right by reason of the fact that they had failed to
pay their poll taxes for 1897 and 1898 prior to February
11, 1899, before receiving any intimation that an elec-
tion would be held prior to the annual June election,
and that under the provisions of the existing law and by
the terms of said ordinance they were wholly unable to

become qualified electors by payment of such poll taxes after notice of the election was had; that no provision was made by law or by ordinance of the said city to furnish any facilities or means whereby persons who were qualified to register as electors in the city of St. Augustine could become such registered electors for several months, to-wit: Nine months prior to the date of said pretended election of the twenty-eighth day of March, A. D. 1899, and thereby many citizens of the said city who were otherwise qualified to vote were deprived of the right to vote at the said election, their approval or disapproval of the said bonds; that the ordinance of March 9th did not provide in exact terms the amount of bonds proposed to be issued, nor the purpose for which they were to be used, as required by the statute in such case provided; that the ordinance put no limit on the amount of bonds which could be issued thereunder; that the city was and is not authorized by law to construct and own an electric light plant for the purpose of supplying the city and its citizens with light; that so much of the ordinance as pretends to authorize the issue of bonds for the erection and construction of an electrical light plant to supply the city and its citizens with light is unconstitutional on the ground that the ordinance prohibits the right of the city to supply light to inhabitants of the city who are not citizens thereof; that the ordinance is also void for the reason that certain of the bonds mentioned therein are to be paid in gold of standard weight and fineness, and because the city is not authorized by any valid statute to issue bonds payable in gold of standard weight and fineness with or without the approval of the qualified electors and freeholders of the city; that the freeholders who are citizens of St. Augustine own

only about ten per cent. of the assessable property of the
city, and pay only about ten per cent. of the total taxes
assessed by the city; that the other nine-tenths of the
assessable property of the city is owned by persons not
citizens of the city; that the total number of male per-
sons above twenty-one years of age who are citizens of
the city and qualified to vote at said election by reason
of requisite age and citizenship is one thousand and up-
wards; that a great portion of them were not allowed to
vote at said election by virtue of the laws of Florida and
said ordinances, and that another large portion of said
persons took no interest in the election and did not
vote because they regarded the election as illegal and
void; that well knowing their acts are illegal the city
council are about to turn over for sale bonds of the city
to the amount of $20,000; that the issue and sale of said
bonds will increase the burden of taxation on the prop-
erty in the city; that the establishment of an electric
light plant to be owned by the city is wholly unneces-
sary, there being an adequate supply of gas for all pur-
poses of the city and its inhabitants by a gas plant
owned by a private corporation; that the population of
the city, about four thousand persons or less, is so small
that the consumption of electric lights by the citizens, or
even by the citizens and inhabitants of the city would be
totally inadequate to produce a revenue to meet the ex-
penses of the plant and the operation thereof and main-
tenance thereof by repairs and renewals; that the service
performed by the gas plant to the city and its inhab-
itants is exceptionally good and cheap; that the erection
of poles and stringing wires to operate an elec-
tric light system in the narrow streets of the city
will greatly destroy the attractiveness of the city, deteri-
orate the value of the property therein and greatly en-

Middleton v. St. Augustine.—Statement of Case.

danger the property and the lives and limbs of the inhabitants; that it is contrary to the best interests of the city for it to engage in dealing in electricity; that the issue and sale of said bonds and the establishment of an electric light plant with the proceeds thereof to be owned and operated by the city will unreasonably and illegally increase the burden of taxation upon the property in the city because the city is now obligated by a valid contract entered into between it and the St. Augustine Gas and Electric Light Co., a private corporation having a gas plant within the limits of the city, to take and pay for the lighting of the streets and public places of the city until April 27, 1905. Upon information and belief it was alleged that the city is bound by a valid existing contract entered into between the city and the St. Augustine Gas and Electric Light Co. to take and pay for at the rate of twenty dollars each per year, payable monthly, two hundred and four street lamps now placed on its streets under contract with said company until April 27, 1905. It was further charged that complainants reasonably feared that for the city to erect and operate an electric light plant will be deemed by the St. Augustine Gas and Electric Light Co. an impairment of the existing charter and contract between the city and the company, and result in expensive litigation and damages against the city in a large sum in case the city attempts to furnish light for its public places; that if the city should refrain from furnishing light for its streets and public places prior to April, 1905, having constructed an electric light plant, complainants and other property owners of the city will be unnecessarily und unreasonably taxed to pay the interest and for a sinking fund up-

on the bonds proposed to be issued, and
at the same time be taxed to pay the
amount due and to become due to the St.
Augustine Gas and Electric Light Co. of over $4000
per year up to April, 1905, for lighting the city under
the contract between the city and the company. It was
further alleged that the whole matter of the issuance of
said bonds has been on the part of the city council of
said city characterized by unreasonable haste, conceal·
ment and flagrant disregard of the requirements of the
law and the rights and liberties of the property owners,
electors and inhabitants of the city of St. Augustine.
That by statute of the State of Florida in case of a va-
cancy in the office of mayor of the city of St. Augustine
occurring more than ninety days before an annual elec-
tion, a special election is required to be
held to fill such office within thirty days
from such occurrence; that the office of mayor
of said city was vacated by the permanent re-
moval of the former incumbent of the office of mayor,
one F. B. Genovar, to the Island of Cuba early in the
month of February, A. D. 1899; that such permanent
removal was publicly announced more than ninety days
before the annual election to be held in said city on the
20th day of June, A. D. 1899, and yet said city council,
well knowing the requirement of said statute refused to
hold said special election, such refusal being due, as
alleged upon information and belief, to fear that the
contemplated acts and doings of the city council in the
matter of the issue of bonds would not receive the ap-
proval of the electors of the city; that by the terms of
the statute in such case made and provided, the matter
of the issuance of bonds of said defendant corporation
is committed to the mayor and city council, subject to

approval of the freeholders qualified to vote, but by design of the members of the city council and at the instigation of interested parties, there has been no mayor of said city since the beginning of the matters hereinbefore set forth; that the acting mayor of said city has participated in all the acts of said city council and voted on all the ordinances and resolutions relating to said issue of bonds, and thereafter attempted to approve of such ordinances as the acting mayor of said defendant city; that said city council has never had before it and considered the matter of whether or not the city of St. Augustine should erect, maintain and operate a system of electric lighting, either for furnishing light for illuminating said city and lighting the city and its streets and avenues (said city owning no public buildings), or whether or not said city enter upon the business of furnishing for hire to the inhabtants of said municipality electric light or light and power; that there has never passed in the city council of said city a vote that it is expedient for said defendant city to exercise the right granted by law to cities and towns to construct, establish and maintain a plant for the manufacture of electricity for municipal use, or for the use of such of its inhabitants as may require and pay for electricity, or for both of such uses; that no such vote of said city council has been had and passed by a vote of two thirds of the members of said city council voting at a meeting duly called for that purpose; taken by written or printed ballot, and duly recorded; and no determination, had according to the provisioins of law above set forth, that it is expedient for the defendant city to enter upon the business of the manufacture and furnishing of electricity, has ever been satisfied by a majority of the voters at an

annual or special election called for that purpose, as required by law before said city is allowed to enter upon such commercial enterprise; that although the city council of said city are about to issue the negotiated bonds of said city to the amount of twenty thousand dollars, and to turn the same over to certain persons styled in said ordinances "the Board of Bond Trustees of the City of St. Augustine," to be sold, yet there never has been enacted any ordinance of said city directing how the proceeds from the sale of said bonds are to be used or expended, or how much thereof is to be expended; or providing for or directing the erection of an electric light plant; the purchase of machinery and appliances, and providing for the management and control thereof by the defendant city or its agents after the same shall have been established. On information and belief it was alleged that the city council intend to surrender the delegated public powers of said corporation to certain persons designated in the ordinances, "the Board of Bond Trustees" or "the Board of Bond Trustees for the Water Works System," and to transfer to said persons all its powers and duties connected with the matters provided for in the ordinance passed March 8th, 1899, whatever the same may be found to be, and to leave it to said persons to discover , if so be they may, what is contemplated and required by said ordinance; that such surrender is wholly illegal and void and beyond the power of said defendant city. That the said ordinances, in so far as they or either of them attempt to surrender the public powers delegated to said corporation, are illegal and void; that such surrender of power is so interwoven and merged in the said ordinances, and in the submission to

the vote of the freeholders that said ordinances are wholly void and any issue of bonds thereunder would be wholly illegal and void; that there is not now, and never has been any "Board of Bond Trustees" or any "Board of Bond Trustees for the Water Works System" as an office of the city of St Augustine; that there is and are no officer or officers of said city designated or styled "the Board of Bond Trustees" or "the Board of Bond Trustees for the Water Works System," either *de jure* or *de facto*; that the actions of said defendant corporation in attempting to turn over to persons not officers of said city, the issue of twenty thousand dollars of said city's bonds and the proceeds from the sale thereof, is wholly illegal and void and will be an irreparable injury to complainants and to all persons owning property in said city; that by the form of said bonds as provided by ordinance of said city the same are made to recite that they are issued in strict conformity with the laws of the State of Florida, countersigned by the chairman, secretary and one member of the so-called "Board of Bond Trustees," and by the terms of the ordinance, when so signed and sealed with "their seal" shall become payable to the lawful bearer thereof; that the city council has made a contract with a certain firm or corporation, called Walker, Evans and Cogswell, for the engraving and delivery of bonds in accordance with the form prescribed in said ordinance and will, unless restrained by the injunction of this honorable court, forthwith have executed, delivered and sold negotiable bonds of said city to the amount of twenty thousand dollars, upon their face bearing the recitals set out many of which recitals are untrue and known to defendants to be untrue; that the said issue of twenty thousand dollars of bonds of said city is illegal and void as not authorized

by any ordinance of said city, in that said bonds are made payable at a designated place· beyond the State of Florida, without the authority of law, and are made payable in gold coin of the United States of America, with the interest payable in like gold coin, without authority of law, and are directed to be issued and sold in amounts as the proceeds are needed to pay for the improvements contemplated, although what the contemplated improvements are is wholly vague and has never been determined by the defendant city; that Chapter 4866 laws, approved May 11, 1899, is wholly ineffectual and inoperative to authorize and empower the issue of bonds as contemplated; that in so far as it is legal and valid it does not authorize the city to proceed in the manner stated to issue said bonds in the form proposed and provided for; that the title of said act does not set forth or embrace or refer to aught, other than the ordinance of March 9th and the so-called election held thereunder; and said act is unconstitutional and void as special legislation in relation to the city of St. Augustine in a matter not pertaining to its public rights and duties, but relating wholly to its rights in its semi-private character, passed without notice of intention to apply therefor; and is unconstitutional and void as an attempted legislative levy of a debt and charge upon the property of complainants, and all other property owners of said city of St. Augustine, and a levy of taxes by the legislature in the city of St. Augustine and upon the property of its inhabitants and an attempted levy of taxes for purposes other than municipal; and to raise moneys to be expended by persons other than officers of said city, and as an attempt by the legislature to appoint officers and make contracts for said municipaltiy of St. Augustine, and is in effect an attempt by the State to deprive ora-

tors and others of their property without due process of law, and contrary to the constitution of the United States; and is an attempt to authorize persons not officers of said municipal corporation to carry on business with the moneys raised from municipal taxation; and is unconstitutional and void as an attempt by the legislature to make valid and binding and a debt of said city, a contract for the payment of a large sum of money, not yet entered into; the preliminaries of which were void *ab initio*, and where said city had received no benefit under such initiatory contract; and said act is illegal and void, as controlled by the proviso of said act, that said bonds, the issue of which said act proposes to validate, shall not be sold in contravention of the ordinance passed March 8th, 1899, as to the amount issue, while by the terms of said ordinance the amount of issue was left to the future determination of certain persons not officers of said city; that said act is unconstitutional and void, in so far as it attempts to declare valid and legalize the election held on March 28th, 1899, aforesaid, and the result as shown by the returns therof, and to declare and render valid the said ordinance passed March 8th, 1899, and approved March 9th, 1899, on the ground that the same is not within the scope of the power and authority of the legislature of Florida, under the constitution of the State of Florida, but within the exclusive jurisdiction, power and authority of the judicial department of the State of Florida, under the constitution of said State, and is void as an attempted assumption and usurpation of exclusively judicial functions, by the said legislature.

The bill prayed for general relief and specially that defendants be perpetually enjoined from executing, issuing, selling or otherwise disposing of any of the bonds of the city under authority sought to be derived from

the ordinance of March 9th, the election held thereunder or from the act of the legislature approved May 11, 1899, known as Chapter 4866, and from delivering to any persons to be sold and especially from delivering the same to the Board of Bond Trustees or the Board of Bond Trustees of the Water Works System of the city and from surrendering to any person or persons not officers of the city any of the public powers and duties belonging to the city; that defendants by temporary injunction be so enjoined until further order of the court and especially until such time as a system of improvements to be carried out with the proceeds of the bonds shall have been determined by ordinance provided by the city and the proper officers and agents of the city for the management and control of the moneys and improvements shall have been provided for, elected and qualified.

On May 24, 1899, the city council passed and the president of the council and acting mayor approved an ordinance as follows:

## AN ORDINANCE

To Authorize the Board of Bond Trustees of the City of St. Augustine to sell and providing for the delivery of the Electric Light Plant Bonds of the City of St. Augustine.

Be it ordained by the Mayor and the City Council of the City of St. Augustine.

Section 1. That the Board of Bond Trustees are hereby authorized and directed to sell the entire issue of twenty thousand dollars ($20,000), of bonds recently authorized to be issued by the city of St. Augustine, and

known as Electric Light Plant Bonds of the city of St. Augustine, to be paid for and delivered at the following times and in the following amounts, or as near thereto as may be practicable: Ten thousand dollars ($10,000) on the first day of September, 1899, and the remainder in blocks of five thousand dollars ($5,000) on the first day of each month thereafter until the whole issue shall be delivered, sale to be made of the whole or of any part of said issue. Said bonds shall be sold with the understanding and condition that interest thereon shall be paid only from the date of delivery to the purchaser, which fact shall be noted on coupons partially earned before delivery. The trustees shall reserve the right after sale to deliver only so much of said bonds as may be by ordinance declared ncessary for the purposes contemplated in the ordinance authorizing the issuance of said bonds, approved March 9th, 1899.

Sec. 2. The Board of Bond Trustees of the city of St. Augustine are hereby authorized to incur such reasonable expense as may be declared to be necessary by a majority of said trustees in and about the preparation and sale of said bonds, which expense shall be paid, upon approval by the city council.

Thereafter on July 27, 1899, by leave of the court the same complainants filed their supplemental bill of complaint in the cause against appellees which, after reference to the original and amended and supplemental bills, alleged that on or about July 21, 1899, eighty bonds of an aggregate par value of $20,000, purporting to be executed by the mayor and city clerk, and by the president of the city council under and in pursuance of the ordinance approved March 9, 1899, were delivered to the defendants Bartola Genovar, R. J. Oliver, Bernard Masters, A. L. Rogero and J. A. McGuire as the con-

stitutent members of a body known as the Board of
Bond Trustees of the City of St. Augustine, Florida, or
some person acting in their behalf and for them, for dis-
position in conformity with the terms of the ordinance
approved May 24, 1899; and upon information and belief
it was alleged that said board of bond trustees have in-
vited or are about to invite bids for said bonds and are
proceeding to a sale thereof and will before September
1, 1899, if not sooner restrained, part with possession
of the bonds in the hope of defeating complainants'
rights in the premises. The bill prayed that defendants
be perpetually enjoined from issuing, selling or other-
wise disposing of any bonds of the city by virtue of au-
thority derived from the ordinance of March 9th, the
election held March 28th or from the act of the legisla-
ture, Chapter 4866, approved May 11, 1899; that defen-
dants be so enjoined until the further order of the court
and especially until such time as a system of improve-
ments to be carried out with the proceeds of the bonds
shall have been determined by ordinance provided for by
the city and the proper officers and agents of the city for
the management and control of the moneys and said im-
provements shall have been provided for, elected and
qualified, and that defendants be enjoined from deliver-
ing to any persons except upon the order of the court
any of said bonds, and then only to be cancelled by the
court, and especially from delivering to any person any
of said bonds before September 1, 1899, except upon
order of the court, and for general relief.

The defendants filed their demurrer to the amend-
ed and supplemental bill and the supplemental bill, and
the cause came on to be heard upon the demurrer and
upon motion for temporary injunction. The parties in-
troduced various matters of evidence upon the hearing

of the motion, which it is not necessary to notice further. The court entered a final decree sustaining the demurrer and directing that the bills of complaint stand dismissed unless complainants should amend the bills to disclose a good cause of action on or before September 25, 1899. From this decree the complainants entered their appeal.

*Bisbee & Bedell and W. W. Dewhurst,* for Appellants.

*D. U. Fletcher and H. B. Phillips,* for Appellees.

PER CURIAM. (*After stating the facts.*)

The appeal is from the order of the court sustaining the demurrer to the amended and supplemental bills. The action of the city of St. Augustine in the mater of establishing an electric light plant in said city, and the issuance of bonds in payment therefor, was based upon the powers conferred upon said city by its charter, being Chapter 4636, laws of Florida enacted in 1897. Besides these specific charter powers, the power was conferred generally upon all cities and towns within the State to construct and own electric light plants and to issue bonds in payment therefor by the provisions of Chapter 4600, laws of 1897, but it is not contended for the city of St. Augustine that the provisions of this latter act were invoked in the steps taken to establish its electric light plant, but, on the contrary, that it acted under the provisions of its own special charter powers. These special charter provisions, that are set forth in the statement accompanying this opinion, were amply sufficient to invest the municipality of St. Augustine.

21

with power to erect an electric light plant and to raise the funds therefor by bonds of the city. Jacksonville Electric Light Co. v. City of Jacksonville, 36 Fla. 229, 18 South. Rep. 677.

The bill to enjoin the issuance of the bonds proposed by the city questions the legality of both the ordinance alleged to have been passed by the city council on March 9th, 1899, and the election held thereunder on the 28th day of the same month, on various grounds as shown by the foregoing statement. After the passage of the said ordinance and the holding of the said election thereunder the legislature of Florida enacted the curative statute, Chapter 4866, approved May 11th, 1899, set out in full in the statement above.

· Under the provisions of section 8 of Article VIII of the Florida constitution of 1885, the legislature had the power in the first instance to authorize the municipal corporation of St. Augustine, through its properly constituted corporate authorities, to erect and own an electric light plant for supplying light to its citizens or inhabitants, and to issue bonds for such purpose, either with or without the sanction of its individual citizens or taxpayers as expressed in an election. In respect to statutes curing defects in legal proceedings, where they amount to mere irregularities, not extending to matters of jurisdiction, and in the absence of constitutional limitations, Judge Cooley, in his work on Constitutional Limitations, page 457, states the rule as follows: "If the thing wanting, or which failed to be done, and which constitutes the defects in the proceeding, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute. And if the irregularity consists

in doing some act, or in the mode or manner of doing some act, which the legislature might have made immaterial by prior law, it is equally competent to make the same in material by a subsequent law." The rule as here expressed has been established by the great weight of judicial decisions in America. The curative act, Chapter 4866, laws of 1899, as expressed in its title, has undertaken to legalize the municipal election held March 28th, 1899, and to validate the said city ordinance under which it was held, and to authorize the issue of bonds as therein provided. By the first section of this act the said city ordinance and the said election were legalized and declared to be valid and binding in every respect. By the second section of said act the city of St. Augustine was authorized to proceed with the issuance of bonds to the amount of $20,000 as provided in and by said ordinance, and in manner and form and in accordance with such ordinances thereafter passed not in conflict with the validated ordinance; and it was declared that the bonds of said city issued in pursuance of said validated ordinance, and of such ordinance or ordinances as may be passed in connection therewith were valid in manner, form and effect as issued, and to be binding and have full force, virtue and effect in law and equity against the city of St. Augustine. And it was therein declared that the fact that the proposed bonds were to be payable in gold of standard weight and fineness should not affect their validity. Section three of said curative act declares that said act should be construed to be remedial and curative of any defects or want of power on the part of said city to pass said ordinance, and to hold said election, and to conduct the same in the manner the same was held and conducted, and to declare the result, and to arrive at such results

through those voters who voted at said election, and the legalization of said ordinance and of said election and the issuance of said bonds in pursuance of said ordinance was affirmed as far as the constitution of the State per- mited and the legislature had power to enact. This curative act, in so far as it could do so, supplied and cured all irregularities and defects in the passage and adoption of the city ordinance and in the calling, holding and conduct of the election had in pursuance thereof; and authorized the city of St. Augus- tine to proceed with the issuance of the bonds in accordance with the provisions of that or- dinance or subsequent ordinances not in conflict with it, but it did not undertake to impose it as a compulsory duty upon such city to issue said bonds. In so far as the curative act is concerned the discretionary power of the city through its proper corporate authorities to issue said bonds or not as it pleases was and is not taken away, but is expressly recognized and not abridged. This legislative act which the city now invokes must be sustained unless it conflicts with some constitutional limitation. It is contended by counsel for the appellants that it was not competent for the legislature to pass the curative act in question under the provisions of section 5 of Article IX of our present constitution, which pro- vides that "the legislature shall authorize the several counties and incorporated cities or towns in the State to assess and impose taxes for county and municipal purposes, and for no other purposes  *  *  *  .  But the cities and incorporated towns shall make their own assessments for municipal purposes upon the property within their limits." It is argued that this provision of our constitution is similar to that in the constitution of Illinois, and that the construction there put upon it in

the case of Marshall v. Silliman, 61 Ill. 218, and in other decisions cited from the same State, denies to the legislature the right to validate a void subscription and election for bonds and to direct their issuance, upon the ground that it would be compelling the municipality to incur a debt for purely a local municipal purpose. The provision in the Illinois constitution thus construed is that "the corporate authorities of counties, townships, schools districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes," and it seems to be held in that State that under it the legislature can not *compel* a municipal corporation to incur a debt for a purely local municipal purpose. We do not construe the curative act herein involved as imposing upon the municipality of St. Augustine the *compulsory* duty of issuing the bonds provided for in the validated ordinance, nor does it attempt to validate any bonds already issued, and hence it is unnecessary to either approve or disapprove the Illinois cases cited, or to determine whether or not the legislature can compulsorily require a municipality here to contract a debt for a purely local municipal purpose, without its consent or to validate bonds already issued illegally by it. The bill assails the city ordinance, the mode and manner of its adoption, the election held thereunder, and the sufficiency of the notice given of the holding thereof, and the qualification of the persons who voted thereat, and the form of the bonds proposed by said ordinance in many particulars that it is unnecessary to repeat here, many of these assaults may be within themselves unfounded or insufficient, independently of the curative act, to defeat the issue of the bonds sought to be estopped, but in no respect or particular is there any defect or irregularity pointed out or alleged against either the city ordi-

nance or the bonds proposed that it was not within the power of the legislature to cure and validate by subsequent legislation as it has done. In so far as the alleged defects and irregularities in the election held and as to the qualification of the voters thereat are concerned, it is a complete answer to say that the legislature had the power to authorize the municipality to issue the bonds in question without and submission at all of the question to an election by the taxpayers of the city, and, consequently, under the rule stated, it had the power by the subsequent curative act to declare that such election as was in fact held was a sufficient predicate for the proper issuance thereof, even though such election may have been irregular and defective, which fact we do not determine.

The contention that the ordinance illegally confines the furnishing of electric light only to *citizens* of the city, we think is untenable. It is true that in this connection the ordinance uses the word "citizens" but we think that it is used therein in its popular sense, including all residents and inhabitants, whether they be technically citizens of the city or not.

It is contended that the ordinance illegally delegates to the board of bond trustees of the city, who are neither officers of the city *de jure* or *de facto*, powers and duties exclusively appertaining to the city council, but it is not contended that there does not exist an agency of the city known as such board of bond trustees. The constituent members of such board are made parties to the bills herein. The powers confered upon this board to receive and countersign the bonds when issued and to sell the same, and to receive the proceeds thereof, are of a purely ministerial or administrative character, and are properly conferred upon them, as held in the case of

City of Tampa v. Salomonson, 35 Fla. 446, 17 South.
Rep. 581, and even though it should be conceded that
the further powers conferred by the ordinance upon
this board to exclusively control the erection of the elec-
tric light plant and to expend the proceeds of the bonds
therefor and to operate the plant when erected are in-
valid, yet such invalid feature of the ordinance will not
affect the other valid features thereof or of the cura-
tive act, nor defeat the proper issuance and sale of the
bonds, since all of those powers can be exercised only
after the bonds are issued and sold. City of Tampa v.
Salomonson, *supra*. The fact that the curative act of the
legislature was enacted subsequently to the institution
of this suit, but before judgment therin, does not affect
the force of validity of such act. Cooley Const. Lim.
(6th ed.) 468, 469; Vaughan v. Swayzie, 56 Miss. 704;
Sidway v. Lawson, 58 Ark. 117, 23 S. W. Rep. 648.

The further contention that the curative act is a
special or local law and is unconstitutional because en-
acted without the giving of the sixty days' prior notice
provided for in section 21 of Article III of the constitu-
tion of 1885, is untenable as held in the case of State
*ex rel.* McQuaid v. County Commissioners of Duval
County, 23 Fla.483, 3 South. Rep. 193. A careful read-
ing of the curative act will show that the city was au-
thorized thereby to issue the bonds only as were pro-
vided for in and by the city ordinance adopted March
9th, 1899, and such subsequent ordinances as were not
in conflict therewith. The said ordinance of March 9th,
1899, expressly provides for the issuance of bonds whose
interest installments were to be payable only at the city
of St. Augustine. It appears, however, from the alle-
gations of an amended supplemental bill herein that the
bonds actually proposed to be issued and sold provide,

contrary to the provisions of the ordinance of March 9th, 1899, that the interest installments or coupons thereof shall be payable either at St. Augustine or in the city of New York. There is no authority, either by the said city ordinance or by the said curative act of the legislature, for the city to issue any bonds the installments of interest on which can be made payable in New York or at any other place than at the city of St. Augustine, and to issue bonds so constructed would be a material variance and departure from the authority conferred. 1 Daniel on Negotiable Instruments, § 648 *et seq.* In this particular respect, and inasmuch as the said bonds are still within the city's control, the bill should have been sustained and the city restrained from selling any bonds that provided New York or any other point than the city of St. Augustine as the place for the payment of their interest installments or coupons.

The decree of the court below is reversed with directions for such further proceedings as shall be consistent herewith.